WHEELING TRUST & SAVINGS BANK *et al.*, Plaintiffs-Appellants, v. TREMCO INCORPORATED *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 85—3626

Opinion filed January 13, 1987.

Rooks, Pitts & Poust, of Chicago (Stephen E. Sward and Clifford E. Berman, of counsel), for appellants.

Jerome M. Brooks and Russell P. Veldenz, both of French, Rogers, Kezelis & Kominiarek, P.C., James R. Quinn, Daniel Dadabo, and Pretzel & Stouffer, Chartered, all of Chicago (Robert Marc Chemers, of counsel), for appellees.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs appeal from the circuit court's rulings dismissing plaintiffs' contract/warranty and tort claims against defendants. Plaintiffs

appeal alleging that: (1) the trial court erred in ruling that plaintiffs were not third-party beneficiaries to contracts between defendants (materialmen) and subcontractors; (2) the trial court erred in dismissing plaintiffs' tort claims against materialmen because plaintiffs lacked an adequate contract remedy against materialmen; and (3) the trial court's rulings, denying plaintiffs recovery under contract/warranty and tort, violated article I, section 12, of the Illinois Constitution.

On March 1, 1979, Richard J. Brown, d/b/a Cambridge Plaza, entered into a contract with Quin-C, Inc., a general contractor, to oversee and direct the design and construction of the Cambridge Plaza Office Building (hereinafter office building). On the same day, Richard J. Brown assigned the rights under his contract with Quin-C to plaintiffs, Wheeling Trust & Savings Bank and trustee under trust 78—522 and Cambridge Plaza Limited Partnership.

Quin-C hired two subcontractors, Paulwin Associates, Inc. (hereinafter Paulwin), and Architectural Products. Paulwin furnished all glass and glazing work, including furnishing and erecting the exterior curtain walls and/or exterior windows. Paulwin then hired two materialmen, Kawneer Company, Inc. (hereinafter Kawneer), and Tremco, Inc. (hereinafter Tremco). Kawneer was hired to supply exterior curtain walls and windows for the project. Tremco was hired to supply all caulking and taping materials for the installation of the exterior windows. Architectural Products furnished all of the exterior precast concrete work. Architectural Products then hired Swanson Cast Stone Company, which thereafter changed its name to R & R Precast Co. (hereinafter Swanson), as a materialman to supply the exterior precast concrete.

Quin-C and its subcontractors constructed the office building in January of 1980, and the plaintiffs immediately occupied the building. In June of 1981, the glass windows began to develop streaks below the exterior precast concrete. The plaintiffs notified Quin-C, Paulwin, Kawneer, Architectural Products, Tremco, and Swanson of the problem, requesting that it be rectified. Despite remedial work, the "problem began to intensify in both scope and severity."

The plaintiffs filed the instant lawsuit on May 23, 1983, against Quin-C, Paulwin, Tremco, Kawneer, Architectural Products, and Swanson. Plaintiff made the following claims: (1) breach of contract and breach of implied warranties against Quin-C; (2) breach of third-party beneficiary contract and breach of implied warranties against Paulwin; (3) breach of third-party beneficiary contract and breach of implied warranties against Architectural Products; (4) breach of Uni-

form Commercial Code (UCC) warranties and strict liability against Tremco; (5) breach of UCC warranties and strict liability against Swanson.

Subsequently, Quin-C and Tremco answered the complaint with general denials. Paulwin, Architectural Products, Kawneer, and Swanson moved to dismiss all claims against them. On October 18, 1984, a hearing on the motions to dismiss was held before Judge William R. Quinlan of the circuit court of Cook County. Judge Quinlan dismissed the following claims: (1) breach of third-party beneficiary contract against Paulwin; (2) breach of implied warranties against Architectural Products; and (3) strict liability claims against Kawneer and Swanson. Plaintiffs, later, moved for reconsideration of Judge Quinlan's rulings.

On June 12, 1985, plaintiffs filed a 14-count amended complaint. The amended complaint made the following claims: (1) breach of contract and implied warranties against Quin-C; (2) breach of express and implied warranties and negligence against Paulwin; (3) breach of express and implied warranties and negligence against Architectural Products; (4) strict liability against Tremco; (5) breach of implied warranties, strict liability, and negligence against Kawneer; and (6) breach of implied warranties, strict liability, and negligence against Swanson.

Quin-C answered the amended complaint with general denials. Paulwin, Architectural Products, Tremco, Kawneer, and Swanson filed motions to dismiss all claims against them in plaintiffs' amended complaint. On November 5, 1985, a hearing was held on plaintiffs' motion to reconsider Judge Quinlan's earlier order and on defendants' motions to dismiss. Judge O'Brien denied plaintiffs' motion to reconsider and dismissed all counts in favor of movants, Paulwin, Architectural Products, Tremco, Kawneer, and Swanson.

This appeal is brought solely as to the rulings dismissing the materialmen, Tremco,[1] Swanson, and Kawneer. Judge O'Brien's rulings dismissing the tort claims against these defendants were based upon his interpretation of the definition and application of economic loss damages in tort actions. He ruled that the nature of the damages, streaking of windows and etching of the glass, was not the type of injury that could sustain an action in tort. He also determined that plaintiffs did have an adequate contract remedy. In dismissing plaintiffs' contract/warranty claims against materialmen Kawneer and

---

[1]Plaintiffs have not alleged that Tremco is a third-party beneficiary. Therefore, Tremco is only bound by this court's ruling addressing plaintiffs' tort claim.

Swanson, Judge O'Brien ruled that plaintiffs, as owners of the office building, were not third-party beneficiaries of the contracts between materialmen and subcontractors. Judge O'Brien reasoned that the mere listing of the destination of materialmen's, Kawneer and Swanson's, products as "Cambridge Plaza Project, Libertyville, Illinois" on purchase orders was not enough to demonstrate that plaintiffs were intended to be third-party beneficiaries.

■ The plaintiffs initially contend that the trial court erred in ruling that plaintiffs, owners of a construction project, were not third-party beneficiaries to the contracts between materialmen Kawneer and Swanson and subcontractors and thereby erred in dismissing the plaintiffs' warranty claims against materialmen. It is well settled in Illinois that only when parties intentionally enter into a contract for the direct benefit of a third person may that person, who is not a party to the contract, enforce any rights therein. (*Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 257, 178 N.E.2d 498.) The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. (346 Ill. 252, 257, 178 N.E.2d 498.) The outcome of each case depends upon the intention of the parties as that intention is to be gleaned from a consideration of the contract and the circumstances surrounding the parties at the time of its execution. (346 Ill. 252, 258, 178 N.E.2d 498; *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 385, 400 N.E.2d 918.) In Illinois, the promisor's intention must be evidenced by an express provision in the contract identifying the third-party beneficiary. 78 Ill. 2d 381, 385, 400 N.E.2d 918.

■ The exact question here is whether a reference to plaintiffs' construction location as delivery site for goods requested by subcontractors' purchase orders, issued to material suppliers, is sufficient to make plaintiffs intended third-party beneficiaries. We rule that more than this is required to make plaintiffs third-party beneficiaries.

Plaintiffs rely upon *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 400 N.E.2d 918, to support their argument. In *Resnik*, the State of Illinois was permitted standing to sue with respect to a contract made between the Illinois Building Authority, then an independent public corporation, and defendant architectural firm. The contract specifically provided that defendant was to design a prison for the use of the State of Illinois. Moreover, the contract required defendant architects to consult with the State of Illinois and to revise specifications as required by the

State. 78 Ill. 2d 381, 385-86, 400 N.E.2d 918.

In the instant case, the only evidence that plaintiffs were intended as third-party beneficiaries were two purchase orders. One purchase order was issued by Architectural Products and accepted by defendant Swanson. This purchase order requested the fabrication of 1,270 feet of precast concrete wall panels and delivery to "Cambridge Plaza Project, Libertyville, Illinois." The other purchase order was issued by Kawneer and accepted by Paulwin for window frames and other installation materials. The purchase order listed the site of the job as "Cambridge Plaza."

In contrast to *Resnik*, there was no language in any document, including the purchase orders, which stated that the window materials provided were specifically for plaintiffs. Rather, the language of the purchase orders merely referred to the delivery site for goods requested by a subcontractor's purchase order issued to a material supplier. Moreover, there was no provision in any agreement which provided for discussions or consultations between plaintiffs and defendants with regard to the materials provided to plaintiffs. Therefore, we affirm the trial court's ruling that plaintiffs were not third-party beneficiaries.

■ Plaintiffs contend that the trial court erred in dismissing plaintiffs' tort claims against materialmen because plaintiffs lacked an adequate contract remedy against materialmen. The trial court dismissed plaintiffs' claims because plaintiffs sought recovery based solely on economic losses. We rule that the trial court was correct in its finding.

In *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 76, 435 N.E.2d 443, the Illinois Supreme Court established that contract law, as opposed to tort law, provides the most appropriate remedies for individuals suffering "economic losses." The court defined economic loss "as damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property," as well as "the diminution in value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." 91 Ill. 2d 69, 82, 435 N.E.2d 443.

These economic losses, or damages resulting from qualitative defects in the product, are not recoverable in tort because a buyer's loss of the benefit of his bargain is not an interest that tort law traditionally protects. (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324.) While tort law traditionally protects individuals or

property from physical harm, contract law protects the individual from concern that the product itself will deteriorate or fail to meet some standard of quality. (92 Ill. 2d 171, 177, 441 N.E.2d 324.) This standard of quality must be defined by reference to the contract which the parties have agreed upon. (92 Ill. 2d 171, 178, 441 N.E.2d 324.) As such, a manufacturer cannot be held liable for the level of performance of his products unless he agrees that the product was designed to meet the consumer's demands. *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 79, 435 N.E.2d 443.

A plaintiff can protect himself against the risk of unsatisfactory performance by bargaining for a warranty. Or, he may choose to accept a lower purchase price for the product in lieu of warranty protection. (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 79, 435 N.E.2d 443.) This choice, however, is up to the purchaser, and the court will not impose a warranty upon the manufacturer which is not provided for by the UCC and which is not bargained for by the parties. See 91 Ill. 2d 69, 79-80, 88, 435 N.E.2d 443.

■ In determining whether damages are considered economic loss, the court must consider three factors: (1) the nature of the defect; (2) the type of risk; and (3) the manner in which the injury arose. *Moorman v. National Tank Co.* (1982), 91 Ill. 2d 69, 85, 435 N.E.2d 433, citing *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir. 1981), 652 F.2d 1165, 1174-75; see *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324; see *Chicago Heights Venture v. Dynamit Nobel of America, Inc.* (7th Cir. 1982), 782 F.2d 723.

In the instant case, plaintiffs claim that defendants, as materialmen, defectively supplied and installed windows in the office building. As a result, in June of 1981 the windows in plaintiffs' building developed streaking and etching. More specifically, plaintiffs alleged that the exterior materials used to install the windows "combined with rainwater or other moisture [to] form [*sic*] dangerous solutions, gasses or solids, which then etch, eat, or otherwise dissolve the exterior curtain walls, windows and/or the office building."

■ After examining the three relevant factors, it becomes evident that plaintiffs ask to be compensated for economic losses. The nature of the defect is clearly qualitative. That is, the installation materials are defective and do not work as well as plaintiff expected. At most, the streaking and etching on the windows of plaintiffs' building have reduced the value of the building, causing future repair or replacement of the windows. Second, the type of risk involved

here is certainly not dangerous. Plaintiffs have failed to allege that the gaseous solutions produced by the installation materials have caused structural damage to the building resulting in injury to individuals or to surrounding buildings. Lastly, the manner in which the defects arose makes it clear that tort remedies are inappropriate. The defect failed to cause sudden and calamitous damage. In January of 1980, the owner began to occupy the premises. In June of 1981, the glass windows began to develop streaks. While the materialmen attempted to remedy the streaking and etching, the "problem began to intensify in both scope and severity." Therefore, it is evident that plaintiffs' alleged defects did not cause sudden and calamitous damage. Thus, we affirm the trial court's determination that plaintiffs' complaint seeks damages for economic losses that cannot be recovered under tort. See *Washington Corte Condominium Association-Four v. Washington-Gold Corp.* (1986), 150 Ill. App. 3d 681 (court held that general contractor was not liable for "economic loss" where negligently supplied windows and exterior sliding doors caused water damage to insulation, walls, ceilings, and electrical outlets).

Plaintiffs, however, contend that *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, 459 N.E.2d 1085, *aff'd in part and rev'd in part on other grounds* (1985), 105 Ill. 2d 474, 475 N.E.2d 822, stands for the proposition that a party will only be barred from recovery for economic loss in tort where he has an adequate remedy in contract. We rule that plaintiffs' contention is without merit. In *Ferentchak*, this court refused plaintiff recovery for economic loss under tort against plaintiff's builder for a defective home foundation. Yet, we allowed plaintiff to recover against the developer's architect and the village of Frankfort. Plaintiffs claim that this court allowed recovery against the architect and village solely because plaintiff buyer lacked a contract remedy against those two defendants. We rule that this was not the court's holding in *Ferentchak*. Rather, the court allowed recovery for economic loss against those defendants for breach of a common law duty to maintain a standard of care exhibited in defendants' professions. See *Rosos Litho Supply Corp. v. Hansen* (1984), 123 Ill. App. 3d 290, 297, 462 N.E.2d 566.

In *Rosos*, this court held that a person may recover economic damages from an architect who was negligent in constructing a building. The court stated that it did not "read *Moorman* as having abolished by inference all professional malpractice acts charging economic losses, arising from service contracts, based upon negligent violation of professional standards of care and skill." (123 Ill. App. 3d

290, 297, 462 N.E.2d 566.) Thus, the court distinguished between cases where the malpractice liability of a professional for negligence in the rendition of services is at issue and cases where the liability of a manufacturer of a product is in question. Because the instant complaint fails to allege that materialmen negligently violated some professional standard of care and skill, we affirm the trial court's ruling. See *Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146 (Illinois Supreme Court held that a plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of plaintiff's inability to recover under an action in contract).

The plaintiffs contend that the trial court's rulings, denying plaintiffs recovery under contract/warranty or tort, violated article I, section 12, of the Illinois Constitution, which requires a remedy for every wrong to a person's property. The Illinois Constitution, at article I, section 12, states:

"Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly."

Defendants maintain that plaintiffs failed to make this argument below and are thereby prevented from presenting this issue to this court. We find that even if this argument had been presented below, plaintiffs were not denied their constitutional right to a remedy. Section 12 and its predecessors have been construed as an expression of philosophy and not as a mandate that a "certain remedy" be provided in any specific form. (*Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 277, 281 N.E.2d 659.) For the reasons expressed above, we believe that plaintiffs should be denied a remedy in tort.

Therefore, the judgment of the trial court is affirmed.

Affirmed.

SCARIANO, P.J., and BILANDIC, J., concur.