ELECTRONICS GROUP, INC., *et al.*, Plaintiffs-Appellants, v. CENTRAL ROOFING COMPANY, INC., *et al.*, Defendants-Appellees (McLennan Company *et al.*, Defendants).

First District (3rd Division) No. 86—3382

Opinion filed December 16, 1987.

William J. Harte, Ltd., and Richard J. Prendergast, Ltd., both of Chicago (William J. Harte, Richard J. Prendergast, and James Prendergast, of counsel), for appellants.

Terrence E. Kiwala and Geoffrey A. Bryce, both of Rooks, Pitts & Poust, of Chicago, for appellee Central Roofing Company.

JUSTICE WHITE delivered the opinion of the court:

Plaintiffs Electronics Group, Inc., and Nathan Yorke, as trustee in bankruptcy on behalf of Electronics Group, Inc., sued 11 defendants, seeking to recover for damages to Electronics Group's inventory, equipment and fixtures. The trial court granted motions to dismiss filed by four of the defendants, Central Roofing Co. (Central), Toth Industrial Sales Corp. (Toth), Schmidt Iron Works Inc., and the Schmidt Iron Works division of S. R. Industries Corp. (The last two defendants will be referred to hereinafter as "Schmidt.") Plaintiffs appeal from the orders dismissing the complaint as to these four defendants. The seven remaining defendants are not involved in this appeal.

Plaintiffs alleged in their second amended complaint that in 1973 and 1974 Central, Toth and Schmidt were all independent subcontractors who worked on the construction of the roof of a building in Wheeling, Illinois. In 1974, Electronics Group leased the building for manufacturing, assembling and storing its products. Plaintiffs alleged that Central negligently constructed the roof so that "the metal roof deck was improperly secured to the steel joists [and] the roof deck was improperly welded." Plaintiffs alleged that because of these defects, "substantial amounts of water entered said premises on or about March 7, 1975, through the roof thereof, causing severe water damage to plaintiff's inventory, equipment and fixtures." More water came through leaks and holes in the roof over the following 11 months. Plaintiffs similarly alleged that Toth negligently constructed the roof deck and Schmidt performed the structural steel work in a defective manner, allowing water to enter the building.

Central, Toth and Schmidt filed motions to dismiss on grounds that plaintiff alleged only economic losses and such losses are not recoverable in tort. The trial court granted the motions.

On appeal plaintiffs contend that they sought recovery for property damage, not for economic loss. In *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, our supreme court decided "to reject imposition of a strict liability in tort theory for recovery of solely economic loss" (91 Ill. 2d at 81), and it further held that those losses were not recoverable in negligence actions (91 Ill. 2d at 88). The court reasoned that recovery for economic loss is best governed by contract law and the Uniform Commercial Code. (91 Ill. 2d at 79-80.) Contract law protects the expecta-

tion interests which are involved when one purchases a product which is unfit for its intended use; tort law compensates persons who have suffered personal injury or property damage due to a dangerous product or occurrence. 91 Ill. 2d at 81.

The court defined "economic loss" as

" 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property ***' (Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum. L. Rev. 917, 918 (1966) ***) as well as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.' (Comment, *Manufacturers' Liability to Remote Purchasers for 'Economic Loss' Damages—Tort or Contract?* 114 U. Pa. L. Rev. 539, 541 (1966).)" *Moorman*, 91 Ill. 2d at 82.

Under this definition plaintiffs in the case at bar do not seek to recover an economic loss because they do not ask for the cost of replacement or repair of the roof, nor do they seek to recover for diminution of the roof's value. Instead, they seek to recover for damage to their other property—their inventory and equipment—caused by the negligent construction of the roof. However, the court in *Moorman* also required tort plaintiffs to allege a "sudden or dangerous occurrence." (91 Ill. 2d at 86.) The plaintiff in *Moorman* failed to state a cause of action in negligence both because it sought to recover for repair of the defective product, an "economic loss," and because the occurrence that plaintiff alleged "was not the type of sudden and dangerous occurrence best served by the policy of tort law that the manufacturer should bear the risk of hazardous products." 91 Ill. 2d at 85.

■■ The appellate court considered this requirement in *United Air Lines, Inc. v. CEI Industries of Illinois, Inc.* (1986), 148 Ill. App. 3d 332, 499 N.E.2d 558. United alleged that CEI constructed United's roof, and water leaked through the roof regularly both during and after its installation. Ten months after CEI completed work on the roof, the water leaks caused an interior roof to collapse, damaging United's equipment. (148 Ill. App. 3d at 335.) The appellate court held that United stated a cause of action for negligence under *Moorman* because the occurrence was sufficiently sudden despite the fact that it was the result of a gradual accumulation of water over a period of time. (148 Ill. App. 3d at 339-40.) Similarly, in *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324, our supreme court

indicated that a homeowner who purchased a chimney could sue in tort if the chimney collapsed and damaged the homeowner's furniture. (92 Ill. 2d at 178.) In the case at bar plaintiffs alleged that a substantial amount of water leaked through the roof on March 5, 1975, and damaged their property. We find that the sudden water leak is the kind of occurrence for which the tort law can provide compensation.

Defendants contend that we should affirm the dismissal of the complaint because plaintiffs have not alleged facts which could support a finding that defendants had a duty of care toward plaintiffs. In every negligence action the plaintiff must allege that defendant had a duty of care to the plaintiff, defendant breached that duty, and the breach proximately caused plaintiff's injury. (*Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 493, 429 N.E.2d 1267.) In determining the existence and extent of a defendant's legal duty to a plaintiff, the court must consider the foreseeability and likelihood of the harm, the burden on defendant of protecting against the harm, and the consequences of placing that burden on defendant. (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 388, 493 N.E.2d 1022.) If defendants in the case at bar made the roof negligently so that it leaked, some water damage to the property of the building's tenant was clearly foreseeable and very likely. The burden of guarding against the harm was only the burden of exercising due care in the construction of the roof. (*Scott & Fetzer,* 112 Ill. 2d at 389.) We find no unreasonable consequences of holding the party who constructs a roof potentially liable in negligence to all parties who, as tenants, rely upon the proper construction of the roof.

Defendants also claim that their status as independent contractors protects them from liability because their liability terminated when they completed their work on the roof. According to section 404 of the Restatement (Second) of Torts:

> "One who as an independent contractor negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattels." (Restatement (Second) of Torts §404, (1965).)

Our supreme court adopted this section in *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 209, 384 N.E.2d 368. Therefore, defendants' status as independent contractors does not protect them from liability for negligence in the construction of the roof, and their liability, like the liability of all manufacturers, continues after the product is sold.

Defendants, relying on *Hunt,* contend that the complaint was properly dismissed because plaintiffs did not allege that the plans for the roof were obviously dangerous. In *Hunt* the defendant, an inde-

pendent contractor, moved for summary judgment and supported his motion with an affidavit which stated that it had fully complied with the specifications of its contract with another party. The plaintiff conceded that the defendant had complied, but the plaintiff argued that the defendant had a further responsibility to use its judgment and not follow the contract if following the contract might lead to injury. The court stated:

> "An independent contractor owes no duty to third persons to judge the plans, specifications or instructions which he has merely contracted to follow. If the contractor carefully carries out the specifications provided him, he is justified in relying upon the adequacy of the specifications unless they are so obviously dangerous that no competent contractor would follow them." (74 Ill. 2d at 209.)

Since the instant case is here on an order granting a motion to dismiss, defendants have had no occasion to assert that they complied with contract specifications. If defendants establish such compliance as an affirmative defense, under *Hunt*, plaintiff then must show that the plans and specifications " 'are so apparently defective that an ordinary builder of ordinary prudence would be put upon notice that the work was dangerous and likely to cause injury.' " *Hunt,* 74 Ill. 2d 203, 210, quoting *Ryan v. Feeney & Sheehan Building Co.* (1924), 239 N.Y. 43, 46, 145 N.E. 321, 322.

■ Defendants also argue that we should affirm the dismissal of the complaint because the complaint is not sufficiently detailed. Defendants did not present this argument to the trial court, and therefore the issue has been waived. *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 466, 415 N.E.2d 1015; Ill. Rev. Stat. 1981, ch. 110, par. 2—612(c).

■ Finally, defendants contend that we should affirm the dismissal of the complaint because the plaintiffs have already received from the seven other defendants the full amount of compensation to which they are entitled. Plaintiffs sought to recover from the seven other defendants for injuries which are to some extent distinguishable from the injuries which plaintiffs allege in the counts against the four defendants involved in the instant appeal. The trial court took no evidence concerning the extent to which defendants may be entitled to a setoff due to plaintiffs' recovery from the other defendants. Therefore, we cannot determine from this record whether or not defendants will be entitled to a setoff of their entire liability due to plaintiffs' recovery from the other defendants.

We can find no grounds in the record upon which we can uphold

the trial court's decision to dismiss the complaint as to the four defendants involved in this appeal. (*Midwest Bank & Trust Co. v. Village of Lakewood* (1983), 113 Ill. App. 3d 962, 974, 447 N.E.2d 1358.) We reverse and remand for proceedings in accord with this opinion.

Reversed and remanded.

RIZZI and FREEMAN, JJ., concur.