BOARD OF DIRECTORS OF OLDE SALEM HOMEOWNERS' ASSOCIA-
TION, Plaintiff-Appellant, v. SECRETARY OF VETERANS AFFAIRS *et
al.*, Defendants-Appellees.

First District (4th Division)   No. 1—90—2835

Opinion filed February 27, 1992.—Rehearing denied March 23, 1992.

Marshall N. Dickler, Ltd., of Arlington Heights (Marshall N. Dickler, Jeffrey A. Goldberg, and Lita H. Brody, of counsel), for appellant.

Harold I. Levine, of Chicago (Samuel H. Levine, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, the board of directors of the Olde Salem Homeowners' Association (Association or Homeowners' Association), brought a foreclosure action in the circuit court of Cook County. The Homeowners' Association named as defendants the Secretary of Veterans Affairs (Secretary), as the record owner of certain real estate, and unknown owners and nonrecord claimants. The Association claimed a lien on the property for unpaid assessments and sought to foreclose the lien as a mortgage.

The trial court granted the Secretary's motion for summary judgment and subsequently denied the Homeowners' Association's motion for reconsideration. The Homeowners' Association appeals, assigning error to the trial court's reasoning and judgment.

We affirm in part, reverse in part, and remand.

BACKGROUND

A

The record contains the following pertinent facts. The Homeowners' Association was created pursuant to a declaration of covenants, conditions, and restrictions. (See generally Kratovil, *The Declaration of Restrictions, Easements, Liens, and Covenants: An Overview of An Important Document*, 22 J. Marshall L. Rev. 69, 78-79 (1988).) The declaration was recorded with the Cook County recorder of deeds on May 30, 1972.

Article VI, section 1, of the declaration confers on the Homeowners' Association the right to levy assessments on each lot owner. Further, the provision creates a continuing lien upon any lot that does not pay the assessments.

Article VII of the declaration contains several pertinent provisions. Section 1 allows the Homeowners' Association to collect the assessment by either bringing an action against the owner for damages or by foreclosing the lien against the lot. Section 2 provides that, prior to any action to foreclose, a notice of the claim of lien must be recorded with the county recorder of deeds. Section 3 provides that the foreclosure shall be conducted according to Illinois mortgage foreclosure law or in any other legally permissible manner. Section 6 states as follows:

"If any lot subject to a monetary lien created by Article VI of this declaration shall be subject to the lien of a first mortgage *** (1) the foreclosure of any lien created by anything set forth in this Declaration shall not operate to affect or impair the lien of such mortgage ***, and (2) the foreclosure of the lien of such mortgage *** shall not operate to affect or impair the lien hereof, except that the lien hereof for said charges as shall have accrued up to the foreclosure *** shall be subordinate to the lien of the mortgage ***, with the foreclosure-purchaser *** taking title free of the lien hereof for all said charges that have accrued up to the time of the foreclosure ***, but subject to the lien hereof for all said charges that shall accrue subsequent to the date of the entry of the decree of foreclosure ***."

## B

On November 3, 1988, the Fleet Mortgage Corporation filed a complaint in Federal district court to foreclose a mortgage on subdivision property located at 7640 Manchester in Hanover Park. The complaint named as defendants the mortgagors (borrowers), the United States of America as a junior mortgagee (lender), and the Village of Hanover Park as a junior lienholder. The Homeowners' Association was not named as a defendant.

On January 19, 1989, the court entered several orders in favor of Fleet Mortgage. The court entered judgment on the pleadings in favor of Fleet. The court also entered a judgment of foreclosure, which provided that the equitable right of redemption would expire on June 5, 1989, and ordered that the property be sold. The court appointed a special commissioner to conduct the sale.

The special commissioner's sale was held on May 12, 1989. Fleet Mortgage was the successful bidder. Fleet subsequently assigned the certificate of sale to the United States Department of Veterans Affairs. On June 9, 1989, the special commissioner issued a deed to the Secretary. On June 20, 1989, the Secretary recorded the deed with the county recorder's office, thereby becoming the record owner of the property.

## C

On October 2, 1989, the Homeowners' Association recorded with the county recorder a claim for lien. The lien purported to be for $4,587.65 in unpaid assessments and late charges, with interest, costs, and attorney fees from December 1, 1987, through October 1, 1989.

On December 5, 1989, the Homeowners' Association filed its original complaint to foreclose its lien under the Illinois Mortgage Foreclosure Law (Ill. Rev. Stat. 1989, ch. 110, par. 15—1101 *et seq.*). The Association named as defendants the Secretary, unknown owners, and nonrecord claimants. On April 26, 1990, the Association, with leave of court, filed an amended complaint to foreclose its lien; the Association sought the additional relief of attorney fees, costs, and expenses.

On July 27, 1990, the trial court granted the Secretary's motion for summary judgment. The court noted that although the Secretary owned the property only since June 20, 1989, the Homeowners' Association sought assessments from the Secretary "for the period prior to, including, and after the foreclosure." The trial court ruled that the Secretary took the property free of assessments prior to June 20, 1989. The court also ruled that the Association could not foreclose on the remainder of the lien under the Mortgage Foreclosure Law. Rather, the Association's remedy was an action against the mortgagors for damages.

On August 16, 1990, the Secretary tendered to the Association $1,736 for unpaid assessments from June 20, 1989, through August 1990. The trial court allowed the Association to accept the payment without prejudice to its rights or claims.

On August 30, 1990, the trial court denied the Association's motion for reconsideration. The Homeowners' Association timely appeals.

OPINION

■ When a plaintiff appeals from a trial court's order of summary judgment for a defendant, the only issue on appeal is whether "the pleadings, depositions, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) Further, it is the judgment that is on appeal to a reviewing court and not what the trial court may have said. The reviewing court need not accept the reasons that the trial court gave for the judgment. The reviewing court may affirm a judgment upon any ground warranted, regardless of whether the trial court relied upon it and regardless of whether the reason that the trial court gave was correct. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12.) These principles apply equally to summary judgments. *Mount Prospect State Bank v. Marine Midland Bank* (1983), 121 Ill. App. 3d 295, 298-99, 459 N.E.2d 979, 982.

## I

The trial court found that the Secretary took the property free of assessments that accrued prior to June 20, 1989, the date that the Secretary recorded the special commissioner's deed. The trial court ruled that it need not determine whether the Association's lien was recorded prior to the Fleet mortgage foreclosure. The court reasoned that it could base its finding *solely* on the plain language of the declaration. Disagreeing with only the trial court's reasoning, we conclude, for two reasons, that the Secretary took the property free of assessments that accrued prior to June 20, 1989.

## A

■ The Secretary took the property free of assessments that accrued prior to June 20, 1989, because the Association's lien did not exist at that time. In *St. Paul Federal Bank for Savings v. Wesby* (1986), 149 Ill. App. 3d 1059, 501 N.E.2d 707, this court noted that the declaration created a lien for unpaid assessments. We reasoned that such a nonpayment obviously did not occur when the declaration was recorded, but rather when the assessment actually went unpaid. Therefore, such a lien necessarily arose only when the lien itself was recorded, one which claimed an actual debt or obligation to perform an act. 149 Ill. App. 3d at 1067-68, 501 N.E.2d at 712-13.

In the case at bar, the declaration, as the declaration in *Wesby*, created a lien for unpaid assessments. Therefore, the Association did not have a lien on the property when it recorded the declaration in 1972. Rather, the Association had in 1972 "merely a notice that a right to perfect a lien existed." (*Wesby*, 149 Ill. App. 3d at 1068, 501 N.E.2d at 713.) The Secretary recorded the special commissioner's

deed on June 20, 1989, but the Association did not record its claim of lien until October 2, 1989. Consequently, the Secretary took the property free of assessments that accrued prior to his becoming the owner.

## B

■ We uphold the trial court's entry of summary judgment for the Secretary for an independent and equally controlling reason. The trial court ruled that the Secretary took the property free of assessments that accrued prior to June 20, 1989, based on the express language of the declaration. Generally, a covenant should be interpreted to give effect to the actual intent of the parties at the time the covenant was made. The intent of the parties can best be determined by the covenant's explicit provisions. (*Streams Sports Club, Ltd. v. Richmond* (1983), 99 Ill. 2d 182, 188, 457 N.E.2d 1226, 1230.) Where the language of a covenant is unambiguous, clear, and specific, no room is left for interpretation or construction. 21 C.J.S. *Covenants* §5 (1990).

After carefully reviewing the entire declaration, we agree with the trial court that the Secretary took the property free of assessments that accrued prior to June 20, 1989. We initially note, as the trial court noted, that the Homeowners' Association recorded a claim of lien for unpaid assessments that accrued from December 1, 1987, until the filing of its initial complaint. However, in its appellate brief, the Association concedes that article VII, section 6, of the declaration "allow[s] the mortgagor purchaser [*i.e.*, the Secretary] to take free of charges assessed prior to the decree of foreclosure," which was January 19, 1989. Consequently, the Secretary is entitled to summary judgment on that portion of the Association's lien for unpaid assessments that accrued from December 1, 1987, to January 19, 1989.

Further, article VII, section 6, of the declaration plainly states that the foreclosure purchaser, in this case the Secretary, takes "title free of the lien hereof for all said charges that have accrued up to *the time of the foreclosure.*" (Emphasis added.) The Association argues that this section did not waive or bar the charges assessed from the January 19, 1989, mortgage foreclosure judgment to the June 20, 1989, recording of the special commissioner's deed. However, the "foreclosure" did not end with the January 19, 1989, foreclosure judgment. Rather, the foreclosure was not completed until June 9, 1989, when the special commissioner issued the deed to the Secretary, which he recorded on June 20, 1989. See *Newport Condominium Association v. Talman Home Federal Savings & Loan Association*

(1988), 188 Ill. App. 3d 1054, 1059, 545 N.E.2d 136, 139; Ill. Rev. Stat. 1989, ch. 110, par. 15—1509(b).

True, the declaration further provides that the foreclosure purchaser, *i.e.*, the Secretary, takes title subject to the Association's lien for assessments "that shall accrue subsequent to the date of the entry of the decree of foreclosure." However, the Secretary did not take title by way of the January 19, 1989, foreclosure judgment. Rather, the Secretary took title when the special commissioner issued the deed on June 9, 1989, which the Secretary recorded on June 20. The Association's lien for unpaid assessments was not binding on the Secretary prior to his becoming the title holder. See *Newport Condominium Association*, 188 Ill. App. 3d at 1059-60, 545 N.E.2d at 139-40.

Of course, the Secretary took title when the special commissioner issued the deed on June 9, 1989, and not when the Secretary recorded the deed on June 20. The Secretary's failure to record promptly the special commissioner's deed did not affect its operation as a conveyance. However, the deed was valid between only the Secretary and the special commissioner. (See 13 Ill. L. & Prac. *Conveyances* §101 (1955); 3 E. Grigsby, Illinois Real Property §§1168 through 1169 (1948).) As to the Homeowners' Association, the special commissioner's deed did not take effect until it was recorded on June 20, 1989. Ill. Rev. Stat. 1989, ch. 30, par. 29.

Since the declaration provided that the Secretary took title free of assessments up to the time of foreclosure, and since the foreclosure was not complete with respect to the Homeowners' Association until June 20, 1989, the Secretary took the property free of assessments that accrued prior to that date. For both of the above reasons, we hold that the Secretary is entitled to a summary judgment on that portion of the Association's lien for unpaid assessments that accrued prior to June 20, 1989.

## II

The remaining issue concerns the Homeowners' Association's lien for unpaid assessments that accrued subsequent to June 20, 1989. The trial court ruled that the Association could not enforce the remaining portion of its lien as a mortgage under the Illinois Mortgage Foreclosure Law. Citing 27 Ill. L. & Prac. *Mortgages* §2 (1956), the court reasoned that "[i]n order for this lien to be a mortgage which could be foreclosed, there must be a conveyance of an estate to secure a debt." Thus, because the Secretary "simply never conveyed its estate as security for the assessment liens," the Association's remedy was an action against the Secretary for damages.

The trial court's reasoning and result constituted error. "In 1900, [the Illinois Supreme Court] recognized the common law precept that a mortgage was a conveyance of a legal estate vesting title to the property in the mortgagee." (*Harms v. Sprague* (1984), 105 Ill. 2d 215, 222, 473 N.E.2d 930, 933, citing *Lightcap v. Bradley* (1900), 186 Ill. 510, 519, 58 N.E. 221, 223; see 27 Ill. L. & Prac. *Mortgages* §§2, 77 (1956).) However, for nearly 40 years, Illinois courts have repeatedly rejected the "title theory" of mortgages in favor of the "lien theory." *Harms*, 105 Ill. 2d at 222-23, 473 N.E.2d at 933-34 (and cases cited therein).

■ If this principle needs repeating, we now explicitly do so. Illinois courts no longer view a mortgage as a conveyance of a legal estate to the mortgagee; rather, " 'the holder of the mortgage takes only a lien thereunder.' " (*Harms*, 105 Ill. 2d at 223, 473 N.E.2d at 933, quoting *Kling v. Ghilarducci* (1954), 3 Ill. 2d 454, 460, 121 N.E.2d 752, 756; see R. Kratovil & R. Werner, Modern Mortgage Law & Practice §§1.6, 1.8 (2d ed. 1981).) Codifying these principles, the Mortgage Foreclosure Law defines a mortgage as "any consensual lien created by a written instrument which grants or retains an interest in real estate to secure a debt or other obligation." Ill. Rev. Stat. 1989, ch. 110, par. 15—1207.

■ In the case at bar, the declaration falls squarely within these precepts. By its express terms, the declaration grants to the Association an interest in real estate to secure a debt, in this case a lien on the property for unpaid assessments. In Illinois, a mortgage is a lien that grants an interest in real estate to secure a debt. Therefore, we hold that the Association can foreclose its lien under the Mortgage Foreclosure Law. Consequently, we reverse that part of the trial court's judgment which held that a mortgage required a conveyance of an estate. We remand the cause to the trial court for further proceedings relating to the Association's lien for unpaid assessments that accrued subsequent to June 20, 1989.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.