FEDERAL INSURANCE COMPANY, as Subrogee of Midwest Stock Exchange, Plaintiff-Appellant, v. TURNER CONSTRUCTION COMPANY *et al.*, Defendants (Sesco, Inc., *et al.*, Defendants-Appellees).

First District (4th Division)   No. 1—93—2593

Opinion filed December 28, 1995.

Peter W. Schoonmaker and Anne F. Kerr, both of Condon & Cook, of Chicago, for appellant.

James K. Horstman, Nunzio C. Radogno, Thomas J. Popovich, and Lloyd E. Williams, Jr., all of Williams & Montgomery, Ltd., of Chicago, for appellee Riggio Caulking Co., Inc.

264

Nicholas A. Riewer and Kelly A. Giampa, both of Bollinger, Ruberry & Garvey, of Chicago, for appellee Sesco, Inc.

JUSTICE THEIS delivered the opinion of the court:

The plaintiff, Federal Insurance Company (Federal), as subrogee of Midwest Stock Exchange (Midwest), appeals the trial court's order granting summary judgment on counts XI, XII, XIII and XIV of their complaint. Federal sued defendants, Sesco, Inc. (Sesco), and Riggio Caulking Co., Inc. (Riggio), for water damage to Midwest's computer system. Federal alleges that the damage was caused by a water pipe that ruptured due to defendants' failure to complete exterior caulking in a timely fashion. The trial court granted defendants' motion for summary judgment, finding that Federal failed to establish duty, proximate cause and its status as a third-party beneficiary to the construction contracts. On appeal, Federal argues that: (1) defendants owed duties in tort to Midwest; (2) Midwest was a third-party beneficiary of the defendants' construction contracts; and (3) the trial court erred in considering the affidavit of defendant Sesco's construction superintendent. We affirm.

On October 12, 1982, Exchange Center Corporation (Exchange) leased space in an unconstructed development to the Midwest Stock Exchange with an occupancy date deadline of April 1, 1985. Exchange then contracted with Continental/Turner for the construction of this new development at One Financial Place in Chicago, Illinois. The development included a multistory office tower and an annex to the Midwest Stock Exchange. The annex provided Midwest, the anchor tenant, with a new trading floor.

Pursuant to a subcontracting agreement, Sesco was to perform all work and provide all material for the erection of the development's exterior granite walls. In November of 1983, Sesco entered into a subcontracting agreement with Riggio, whereby Riggio was to provide and install the sealant between the exterior granite blocks of the structure's exterior facade. As such, Riggio was responsible for cleaning the joints between the granite blocks, installing a backer rod for the caulking and caulking the joints themselves.

Riggio began its caulking work in August of 1984. Dissatisfied with the speed of Riggio's work, Sesco wrote to Riggio on October 5, 1984, concerning the necessity of completing the work. On November 22, 1984, the project architect, Skidmore, Owings & Merrill, drafted correspondence to the City of Chicago certifying that the building was suitable for tenant occupancy. On November 23, 1984, however, Riggio responded to Sesco's concerns indicating that the structure would not be sealed and caulked until December 22, 1984.

The record indicates that the owner and general contractor were aware of Riggio's performance. The architects wrote letters to the owner and general contractor expressing their concerns over the effects of the cold on the construction site. The building manager stated in his deposition that city inspectors expressed similar concerns upon their inspections of the building.

Despite this, Midwest was permitted to move into the building in mid-December. Specifically, Midwest moved an expensive computer system into the fourth floor of the Tower. There is no evidence in the record that Midwest, the owner or general contractor ever notified defendants that Midwest or any other tenant would be moving in at that time. The contracts between Riggio and Sesco and Sesco and Continental/Turner did not require completion of the insulation by December 25, 1984.

On December 25, 1984, a water supply line leading to a fifth-floor sink located immediately adjacent to the exterior east elevation froze and ruptured. In addition, three sprinkler heads activated on the seventh floor of the building. Water allegedly pouring from the ruptured waterline penetrated the floor and caused substantial damage to Midwest's computer system below.

Michael Dust, Continental's building manager, determined that the rupture was due to the lack of caulking on the east exterior wall behind the sink. Riggio conceded that the east elevation was not completely caulked and weather sealed as of December 25, 1984.

Federal paid its insured, Midwest, approximately $1 million to replace the damaged computer system. The terms of Midwest's insurance policy provide that Federal is subrogated to the rights of Midwest. In addition to suing the owner, general contractor and other subcontractors for damages, Federal sued Sesco and Riggio for the damage to the computer system.

In counts XI and XIII, Federal claimed that defendants negligently performed the caulking work which was the proximate cause of the computer damage. In counts XII and XIV, Federal claimed that it could recover in contract as a third-party beneficiary to the construction subcontracting agreements. The trial court granted defendants' motions for summary judgment as to counts XI and XIII, finding that Federal failed to establish that defendants owed Midwest a duty to complete the structure by December 25, 1984. Alternatively, the court held that Federal failed to establish proximate cause. Similarly, the court granted summary judgment as to counts XII and XIV, holding that Federal was not a third-party beneficiary to the subcontracting agreements. In its motion for reconsideration, Federal abandoned its claim that the damage resulted from defendants'

improper workmanship, claiming instead that the damage was caused by defendants' failure to complete the job in a timely fashion. The court denied Federal's motion.

On appeal, Federal argues that: (1) the defendants owed duties in tort to Midwest; (2) Midwest was a third-party beneficiary of the defendants' construction contracts; and (3) the trial court erred in considering the affidavit of defendant Sesco's construction superintendent. For the reasons set forth below, we affirm.

Motions for summary judgment are reviewed under a *de novo* standard. (*Myers v. Health Specialists, S.C.* (1992), 225 Ill. App. 3d 68, 587 N.E.2d 494.) As such, this court is not bound by the trial court's reasons for the entry of summary judgment and may affirm on other grounds. (*Board of Directors of Olde Salem Homeowners' Association v. Secretary of Veterans Affairs* (1992), 226 Ill. App. 3d 281, 589 N.E.2d 761.) Because this appeal is before the court on defendants' motions for summary judgment, all reasonable inferences will be drawn in Federal's favor.

Federal claims that both Riggio and Sesco owed duties in tort to Midwest, not contingent upon privity of contract. Federal argues that defendants breached their duty to Midwest to perform in a good and workmanlike fashion by failing to complete their work prior to the accident. Federal claims that this court's decision in *Electronics Group, Inc. v. Central Roofing Co.* (1987), 164 Ill. App. 3d 915, 518 N.E.2d 369, is dispositive of the issue before us.

In *Electronics Group*, the court stated that a roofing contractor who completed his work in a negligent manner was liable to the tenants for water damage caused by the leaking roof. (*Electronics Group, Inc.*, 164 Ill. App. 3d 915, 518 N.E.2d 369.) The court found that water damage was a foreseeable consequence of constructing a faulty roof, the burden of preventing such injury was only the burden of exercising due care, and holding the contractor liable to tenants who relied on the integrity of the roof was not unreasonable. *Electronics Group, Inc.*, 164 Ill. App. 3d 915, 518 N.E.2d 369.

■ We acknowledge that the *Electronics Group* court held that a subcontractor not in privity with a tenant has a duty to complete its work in a workmanlike fashion. (*Electronics Group, Inc.*, 164 Ill. App. 3d 915, 518 N.E.2d 369.) We cannot interpret this holding, however, to encompass a subcontractor's duty to perform its work in a manner which the tenant deems timely.

The contract between Sesco and Continental/Turner required defendants to begin work at Turner's request and then to do so "diligently and continuously." Midwest's leasing agreement called for an occupancy deadline of April 1, 1985. Mr. Weiss of Sesco stated

that there was no time schedule requiring defendants to complete caulking prior to December 25, 1984. In addition, Mr. Steven Riggio of Riggio stated in his affidavit that although the owners and general contractor were aware of defendants' progress, they did not inform defendants that Midwest was moving into the building in December. We must determine whether these facts imposed a duty upon defendants to complete their work prior to Midwest's undisclosed occupancy. An analysis of this State's interpretation of duty reveals that imposing such a duty would be improper.

■ In determining whether the law imposes a duty of care, the court looks to the relationship between the plaintiff and the defendants. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387.) In doing so, the court must examine the following factors: the foreseeability of the injury, the likelihood of the injury; the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendant. *Lamkin v. Towner* (1990), 138 Ill. 2d 510, 563 N.E.2d 449.

■ In the instant case, damage to a tenant's computer due to incomplete work is not a foreseeable injury where the tenant occupies the space early and the subcontractor is not notified. The record is devoid of any evidence that either defendant was notified that Midwest was occupying the space. Nor is there any evidence that either defendant was consulted as to whether it would be safe to allow Midwest to do so. As such, it would be impossible for defendants to anticipate the damage to Midwest's equipment.

While the likelihood of such an injury is great, the burden of guarding against such a harm in the absence of full information is overwhelming. It would require every subcontractor, of its own volition, to keep abreast of every tenant's occupancy date and set its schedule accordingly. The record is replete with evidence indicating that such coordination is clearly the responsibility of the general contractor to whom the subcontractors are contractually liable.

Furthermore, it is unreasonable to hold defendants liable to Midwest for incomplete work where defendants had no control over when or whether Midwest would occupy the space. This court will not impose a duty upon defendants where they were powerless to prevent Midwest's premature move into the unfinished building. (See *Widlowski v. Durkee Foods* (1990), 138 Ill. 2d 369, 562 N.E.2d 967.) Therefore, we affirm the trial court's holding that defendants did not owe Federal a duty to complete their work prior to December 25, 1984. This holding is not dispositive of the issue before us, however, as Federal raises additional arguments.

■ Federal also contends that by virtue of the November corre-

spondence in which Riggio informed Sesco that it would finish the caulking by December 22, 1984, defendants assumed a duty toward Midwest to complete the caulking by that date. Defendants claim, however, that Federal waived this argument by failing to raise it prior to appeal. We agree.

Midwest cannot properly raise a new theory for recovery for the first time on appeal. (*Miscevich v. Commonwealth Edison Co.* (1982), 110 Ill. App. 3d 400, 442 N.E.2d 338.) Though it had ample opportunity to do so, Midwest neither argued nor briefed the issue of assumed duty in the trial court. Even if this issue were properly preserved for appeal, Midwest has not and cannot prove that the letter was written for its benefit. (See *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596.) As such, Midwest is unable to establish an essential element for recovery under an "assumed duty" theory. (See Restatement (Second) of Torts § 324A (1965).) Therefore, we find that defendants did not owe Midwest a duty to complete their work prior to Midwest's occupancy.

■ Federal then contends that aside from defendants' duties in tort, defendants breached contractual obligations toward Midwest. Federal argues that Midwest was an intended beneficiary of Riggio and Sesco's construction contracts. To determine whether Midwest is a third-party beneficiary, we must look to the contracts to determine the intent of the parties. (*Ball Corp. v. Bohlin Building Corp.* (1989), 187 Ill. App. 3d 175, 543 N.E.2d 106.) Midwest has rights under the contract only if it is a direct beneficiary. (*Alaniz v. Schal Associates* (1988), 175 Ill. App. 3d 310, 529 N.E.2d 832.) "The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract." (*Wheeling Trust & Savings Bank v. Tremco Inc.* (1987), 153 Ill. App. 3d 136, 140, 505 N.E.2d 1045, 1048.) Therefore, we must determine whether the parties intended to confer a benefit upon Midwest in entering into their agreements.

■ In the instant case, the relevant contracts were construction contracts. In interpreting construction contracts, Illinois courts have stated that "[i]t is not enough that the parties to the contract know, expect or even intend that others will benefit from the construction of the building in that they will be users of it. The contract must be undertaken for the plaintiff's direct benefit and the contract itself must affirmatively make this intention clear." (*Waterford Condominium Association v. Dunbar Corp.* (1982), 104 Ill. App. 3d 371, 373, 432 N.E.2d 1009, 1011.) Courts presume that the parties to a contract enter into such contracts for only their own benefit. (*Ball Corp. v. Bohlin Building Corp.* (1989), 187 Ill. App. 3d 175, 543 N.E.2d 106.) In

order to overcome this presumption, the contract language must expressly identify Midwest as a third-party beneficiary. (*Wheeling Trust & Savings Bank v. Tremco Inc.* (1987), 153 Ill. App. 3d 136, 505 N.E.2d 1045.) Midwest has the burden of proving that the parties intended to confer a direct benefit upon it in entering into their construction agreements. *Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 421 N.E.2d 182.

Initially, we reject Midwest's argument that because the construction drawings identified the project as the Exchange Center and the Midwest Stock Exchange, the contracts were clearly entered into for Midwest's benefit. Such titles merely identify Midwest as the user. These titles are insufficient to establish that the contract was undertaken directly for Midwest's benefit.

Midwest then argues that the indemnification provision in the defendants' contracts making defendants liable to "all persons" for damages arising from their work is a clear manifestation of their intent to directly benefit Midwest. Midwest cites to *Baker v. S.A. Healy Co.* (1939), 302 Ill. App. 634, 24 N.E.2d 228, in support of its contention that it was a beneficiary under the agreements. In *Baker*, the court found that a blasting contractor was liable to adjacent homeowners for its blasting activities. The *Baker* contract, however, specifically provided that the contractor would be liable to other property owners for damages arising from its blasting activities. *Baker v. S.A. Healy Co.* (1939), 302 Ill. App. 634, 24 N.E.2d 228.

Conversely, the indemnification provisions in the instant case do not identify any third parties. The contract language and attending circumstances do not indicate that the parties intended to benefit anyone but themselves. As such, Midwest has failed to identify any language in the subcontract that constitutes an express declaration to overcome the presumption that the parties contracted only for themselves. Therefore, we affirm the ruling of the trial court that Midwest is not a third-party beneficiary under the subcontracting agreements.

■ Finally, Federal challenges the sufficiency of the affidavit of William Weiss, a former Sesco employee. Federal contends that Weiss' affidavit should have been stricken as it contains both improper conclusions and opinions concerning the quality of defendants' work. Under Supreme Court Rule 191 (134 Ill. 2d R. 191), unsupported conclusions and nonexpert opinions offered in support of a motion for summary judgment are inappropriate and should be stricken. See *Rush v. Simon & Mazian, Inc.* (1987), 159 Ill. App. 3d 1081, 513 N.E.2d 100.

Defendants, however, contend that Federal abandoned and

waived the issue of the quality of defendants' work in their motion for reconsideration, relying instead upon the timeliness of defendants' work. Based upon this, defendants argue that the fact that the affidavit may contain opinions and conclusions concerning the quality of defendants' work is irrelevant. We agree, finding that the relevant aspects of Weiss' affidavit are purely factual in nature. The failure to strike unsupported opinions is harmless where there is a factual basis for the opinions. (*Abadie v. Royer* (1991), 215 Ill. App. 3d 444, 574 N.E.2d 1306, *appeal denied* (1991), 141 Ill. 2d 535, 580 N.E.2d 107.) As such, we find that the admission of the alleged opinions or conclusions in the affidavit was harmless. See *Tower Oil & Technology Co. v. Buckley* (1981), 99 Ill. App. 3d 637, 425 N.E.2d 1060.

Affirmed.

HOFFMAN, P.J., and CAHILL, J., concur.