NEWPORT CONDOMINIUM ASSOCIATION, Plaintiff-Appellee, v. TALMAN HOME FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—87—2197

Opinion filed June 13, 1988.—Rehearing denied October 25, 1989.

Jaros, Tittle & O'Toole, of Chicago (Mary F. Murray, of counsel), for appellants.

Marshall N. Dickler, Ltd., of Arlington Heights (Marshall N. Dickler, Dawn M. Langer, and Nancy R. Cass, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendants, Talman Home Federal Savings and Loan Association of Chicago and unknown owners (Talman), appeal from a judgment of foreclosure and sale entered on June 12, 1987, in favor of plaintiff, Newport Condominium Association, decreeing that Talman owed Newport $40,085.31 in past-due condominium assessments for condominium unit No. 306—S, located at 4800 S. Chicago Beach Drive, Chicago. Talman, record owner of unit 306—S at the time judgment of foreclosure was entered, does not dispute Newport's right as a lienholder to foreclose the property. Rather, Talman disputes the period of time for which assessments were found due and owing Newport from Talman. On appeal, Talman contends that the trial court erred in finding that a certificate of purchase issued to Talman at a sheriff's sale conveyed constructive title to unit 306—S, thereby imposing liability on Talman for assessments commencing with receipt of the certificate of purchase on July 25, 1983. For the following reasons, we reverse the judgment of the trial court and remand the cause with directions.

The record and briefs indicate the following events which led to

Newport's judgment of foreclosure.[1] Troy Thompson held a mortgage with Talman, secured by unit 306—S. On March 12, 1982, Talman filed a complaint to foreclose the first mortgage on unit 306—S for default in mortgage payments, naming Newport as an additional party defendant. At the time, Newport also had a lien on unit 306—S for past-due monthly assessments.

On October 7, 1982, judgment of foreclosure was entered in favor of Talman. Subsequently, on November 9, 1982, an amended judgment of foreclosure was entered, which acknowledged that Newport had a subordinate lien on the premises for past-due condominium assessments in the amount of $3,985.19. On January 25, 1983, a sheriff's sale was held at which Talman was the successful bidder and received a certificate of purchase. Pursuant to the judgment, the statutory six-month period of redemption commenced to run on that date and expired on July 25, 1983.

Meanwhile, on March 3, 1983, Troy Thompson, mortgagor, filed a voluntary bankruptcy petition under chapter 11 of the United States Bankruptcy Code which was later converted to a chapter 7 proceeding. On February 20, 1985, the bankruptcy court entered an order abandoning unit 306—S as property of Thompson's estate. Talman contends that it did not receive formal notification of the order of abandonment until May 7, 1985. Thereafter, on May 29, 1985, Talman exchanged its certificate of purchase for the sheriff's deed to unit 306—S.

On June 25, 1985, Newport filed a complaint against Talman to foreclose its lien on unit 306—S for past-due assessments, claiming an amount due of $10,150.96 for monthly assessments from July 25, 1983, to June 18, 1985, plus costs and additional attorney fees. Talman moved to dismiss the complaint on the grounds that the 1982 judgment of foreclosure barred Newport from foreclosing the lien of unpaid condominium assessments that had attached and accrued on unit 306—S from the date of judgment to the date Talman had exchanged its certificate of purchase for the sheriff's deed. Talman further stated that it had not been entitled to a deed to unit 306—S until resolution of the bankruptcy proceedings and modification of the stay. The trial court denied Talman's motion to dismiss, holding that when the six-month statutory redemption period terminated on July 25, 1983, Talman's right to take the deed occurred automatically without

---

[1]The pleadings filed prior to Newport's complaint to foreclose its lien, which was filed on June 25, 1985, are not contained in the record. All references in this opinion to those prior proceedings are based on undisputed facts in the briefs.

need for leave of court and without any violation of the Bankruptcy Code's automatic stay provision.

Thereafter, on February 27, 1986, Newport moved for summary judgment on the foreclosure complaint. The trial court entered partial summary judgment on July 28, 1986, granting Newport leave to file an affidavit in support of its claim for assessments and common expenses. Subsequently, on June 12, 1987, judgment of foreclosure and sale was entered which decreed that Talman owed Newport the sum of $40,085.31, resulting from default in payment of assessments from July 25, 1983, to June 12, 1987. In entering this judgment, the trial court found, *inter alia*, that: (1) Talman had held constructive title to unit 306—S from July 25, 1983, to June 12, 1987; (2) Talman was obligated for all assessments for common expenses and other charges lawfully assessed by Newport; and (3) Talman had defaulted in payment. Talman appeals from this order.

Preliminarily, we note that the parties agree that Talman, as record owner of unit 306—S, is liable for all monthly assessments due and owing after it exchanged its certificate of purchase for a sheriff's deed on May 29, 1985. The time period in dispute is from July 25, 1983, to May 29, 1985, *i.e.*, from the date the six-month statutory redemption period ended to the date Talman actually secured the sheriff's deed. Talman's position is that it held no title during this period, and, thus, was not liable for monthly assessments that accrued during that time. The trial court held that the certificate of purchase gave Talman constructive title and imposed liability for the assessments.

On appeal, Talman first contends that the determination in an earlier forcible entry and detainer action was *res judicata* as to the question of when Talman became liable to Newport for condominium assessments. As indicated, in June 1985 Newport filed its complaint against Talman for foreclosure. Approximately two months later Newport also filed a forcible entry and detainer action in the municipal court, seeking to recover $13,655.94 in condominium assessments for the period from January 25, 1983, through July 1, 1985. A ruling was entered in the forcible action on January 16, 1986, in favor of Talman.[2] According to Talman, the order determined that Talman was liable only for condominium assessments that had accrued since the issuance of the sheriff's deed on May 29, 1985. Thus, Talman contends

---

[2]The record is void of any pleadings or orders entered with respect to the forcible action. This court has only the undocumented statements in the briefs as to the forcible complaint and ruling. Apparently, mortgagor, Troy Thompson, remained in possession of unit 306—S during the bankruptcy proceedings.

that because the forcible action already litigated and resolved the issue as to the period of time for which Talman was liable for payment of condominium assessments to Newport, the issue is barred by *res judicata* in the foreclosure action.

In response, Newport argues that the only matter determined by the forcible court was possession. By contrast, the issue before the trial court on the foreclosure complaint is a determination of title for the disputed period. Further, Newport contends that the doctrine of *res judicata* requires that the court have had competent jurisdiction over the matter. A forcible entry and detainer court has special and limited jurisdiction reserved only for questions of possession.

█ It is well established that an action for forcible entry and detainer is purely possessory and the immediate right to possession is all that is involved. A court entertaining such an action has limited and special jurisdiction without equitable powers. (*Clark Oil & Refining Corp. v. Banks* (1975), 34 Ill. App. 3d 67, 339 N.E.2d 283; *Pipitone v. Mandala* (1962), 33 Ill. App. 2d 461, 180 N.E.2d 33.) Although title documents which establish the right to possession may be submitted as evidence in a forcible proceeding (*Clark Oil & Refining Corp.*, 34 Ill. App. 3d 67, 339 N.E.2d 283), the issue of title cannot be resolved in such a proceeding (*Pipitone*, 33 Ill. App. 2d 461, 180 N.E.2d 33). Accordingly, because the forcible entry and detainer court lacked jurisdiction to resolve disputes as to title, we conclude that the judgment entered by that court is not *res judicata* of the foreclosure action which raises title as an issue.

█ Next, Talman contends that the trial court erred in its determination that Talman held constructive title to unit 306—S during the period from July 25, 1983, expiration date of the redemption period to May 29, 1985, the date Talman exchanged its certificate of purchase for a sheriff's deed. Talman commences its argument on this issue by defending its two-year delay in exchanging the certificate of purchase for a sheriff's deed on the grounds that: (1) it believed that the automatic stay provision of the Bankruptcy Code prevented it from securing a deed; and (2) even if it could have secured the deed at the end of the six-month redemption period, pursuant to section 12—145 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 12—145) it had no legal obligation to do so. Section 12—145 provides:

> "[T]he legal holder of the certificate is entitled to a deed *** at any time within 5 years from the expiration of the time of redemption." Ill. Rev. Stat. 1985, ch. 110, par. 12—145.

In response, Newport devotes a large portion of its argument to whether the automatic stay provision of the Bankruptcy Code barred

Talman from securing a deed to unit 306—S at the end of the redemption period. This argument, however, is irrelevant to the issue at bar in light of the fact that Talman was under no legal obligation to exchange the certificate for a deed. Section 12—145 merely entitles Talman to that right. It does not mandate that it act on that right. When Talman elected to exchange the certificate of purchase for the deed during the five-year statutory period of section 12—145, title to unit 306—S passed to Talman. (See *Mutual Life Insurance Co. v. Chambers* (1980), 88 Ill. App. 3d 952, 410 N.E.2d 962.) However, if Talman had failed to secure the deed during the five-year period, the certificate would have become null and void and the mortgagor would be the sole owner of the premises, not by any new title, but by the title which he formerly had. (*Allison v. White* (1918), 285 Ill. 311, 120 N.E. 809.) Thus, although it would not be prudent for Talman to purchase the property at a foreclosure sale and not secure the deed during the five-year period following the redemption period, it is not legally obligated to do so, and the law provides for the event when a sheriff's deed is not secured.

■■ ■ The next question to be addressed is whether the certificate of purchase imposed constructive title upon Talman during the period in question. Illinois law has consistently held that title to land sold under a mortgage foreclosure remains in the mortgagor until the expiration of the redemption period and conveyance of the deed to the purchaser of the sale. (*Kling v. Ghilarducci* (1954), 3 Ill. 2d 454, 121 N.E.2d 752; *Hruby v. Steinman* (1940), 374 Ill. 465, 30 N.E.2d 7; *Hack v. Snow* (1929), 338 Ill. 28, 169 N.E. 819; *Mutual Life Insurance Co. v. Chambers* (1980), 88 Ill. App. 3d 952, 410 N.E.2d 962; *Dunlap v. Peirce* (1931), 260 Ill. App. 149.) Contrary to Newport's suggestion, both expiration of the redemption period and conveyance of the deed are necessary to pass title. Expiration of the redemption period is not enough. A certificate of purchase does not confer title, legal or equitable. It is merely evidence of the right to obtain title once the redemption period has expired. *Kling v. Ghilarducci*, 3 Ill. 2d 454, 121 N.E.2d 752; *Allison v. White*, 285 Ill. 311, 120 N.E. 809; *Mutual Life Insurance Co. v. Chambers*, 88 Ill. App. 3d 952, 410 N.E.2d 962.

Accordingly, based upon long-standing Illinois law, until Talman took the sheriff's deed to unit 306—S on May 29, 1985, it had no title, legal or equitable, in Unit 306—S. Therefore, because the obligation to pay condominium assessments is a covenant that runs with the land and is binding only upon title holders (*Streams Sports Club, Ltd. v. Richmond* (1982), 109 Ill. App. 3d 689, 440 N.E.2d 1264), we conclude

that Talman is not liable for the assessments which accrued during the period from July 25, 1983 (expiration of the redemption period), to May 29, 1985 (date Talman exchanged the certificate for the deed). Instead, Talman's liability for the assessments commenced on May 29, 1985.

For the aforementioned reasons, the judgment of the trial court is reversed and the cause remanded with directions to the trial court to dismiss the proceedings against Talman.

Reversed and remanded.

QUINLAN and MANNING, JJ., concur.