# Illinois Official Reports

## Appellate Court

***Pembrook Condominium Ass'n-One v. North Shore Trust & Savings*,
2013 IL App (2d) 130288**

| | |
|---|---|
| Appellate Court Caption | PEMBROOK CONDOMINIUM ASSOCIATION-ONE, Plaintiff-Appellant, v. NORTH SHORE TRUST AND SAVINGS, Defendant-Appellee (Jeffrey Powell, Betty Jo Powell, and Unknown Occupants, Defendants). |
| District & No. | Second District<br>Docket No. 2-13-0288 |
| Filed | December 17, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's judgment the motion of defendant mortgagee to dismiss plaintiff condominium association's complaint in forcible entry and detainer seeking possession of a condominium unit and overdue condominium association fees incurred by the unit's owner before the mortgagee foreclosed its first mortgage and purchased the unit at a sheriff's sale was upheld on appeal, notwithstanding the association's contention that the trial court erred in holding that plaintiff's lien was unenforceable, since plaintiff was not entitled to recover any assessments that came due before April 2012, when the deed conveying the unit to defendant mortgagee following confirmation of the foreclosure sale was recorded and conveyed possession to the mortgagee, and pursuant to section 9(g)(3) of the Condominium Property Act, the payments defendant mortgagee made to the association barred recovery of the alleged lien. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 12-LM-2638; the Hon. Michael B. Betar, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Steven P. Bloomberg and Adam K. Beattie, both of Chuhak & Tecson, P.C., of Chicago, for appellant. |
| | Thaddeus M. Bond, Jr., of Law Office of Thaddeus Bond, Jr. & Associates, of Waukegan, for appellee. |
| Panel | PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices McLaren and Schostok concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiff, Pembrook Condominium Association-One, appeals a judgment granting in part the motion of defendant North Shore Trust & Savings (North Shore) to dismiss plaintiff's complaint (see 735 ILCS 5/2-619(a)(9) (West 2012)) in forcible entry and detainer (see 735 ILCS 5/9-101 *et seq.* (West 2012)). The complaint sought possession of a condominium unit and the collection of overdue condominium association charges that the owner had incurred before North Shore foreclosed its first mortgage and purchased the unit at a sheriff's sale. Plaintiff argues that the trial court erred in holding that its lien under section 9 of the Condominium Property Act (Act) (765 ILCS 605/9 (West 2012)) was unenforceable. We affirm.

¶ 2    Plaintiff's complaint, filed November 27, 2012, sought possession of a condominium unit in Gurnee. North Shore moved to dismiss the complaint, stating that in 2007 North Shore obtained a first mortgage against the property by lending to the owner, Aimee Zeit. At that time, no other liens had been recorded against the property. On July 26, 2011, North Shore filed a complaint to foreclose its mortgage, naming as defendants Zeit and "Unknown Owners or Parties Interested in or in Actual Possession of Said Land or Lots" (Other Defendants). On July 27, 2011, plaintiff recorded a claim for a lien, against Zeit, based on $1,607.55 in unpaid association charges. On August 2, 9, and 16, 2011, a newspaper published a notice of the foreclosure action, directed to the Other Defendants.

¶ 3    North Shore's motion alleged further that on October 7, 2011, North Shore received a judgment of foreclosure finding that Zeit owed North Shore $114,582.19 in principal and interest. On April 13, 2012, at the sheriff's sale, North Shore bought the property for $119,751.65, and the trial court confirmed the sale and granted North Shore possession. On April 17, 2012, a deed was recorded conveying the property to North Shore. On August 30, 2012, plaintiff recorded another claim for a lien, for $7,412.22 in association charges, for

- 2 -

March 2010 through July 2012, plus any subsequent charges. North Shore sent plaintiff checks for the May, June, and July 2012 association charges, but plaintiff refused them. From August 2012 on, plaintiff accepted North Shore's payments.

¶ 4 North Shore argued in part that plaintiff's complaint was defeated by section 9(g)(3) of the Act (765 ILCS 605/9(g)(3) (West 2012)). Because section 9(g)(1) of the Act (765 ILCS 605/9(g)(1) (West 2012)) is the basis for the lien, we set out the pertinent parts of both sections 9(g)(1) and 9(g)(3). They read:

> "(1) If any unit owner shall fail or refuse to make any payment of the common expenses or the amount of any unpaid fine when due, the amount thereof together with any interest, late charges, reasonable attorney fees incurred enforcing the covenants of the condominium instruments *** and costs of collections shall constitute a lien on the interest of the unit owner in the property prior to all other liens and encumbrances, recorded or unrecorded, except only *** (b) encumbrances on the interest of the unit owner recorded prior to the date of such failure or refusal which by law would be a lien thereon prior to subsequently recorded encumbrances. Any action brought to extinguish the lien of the association shall include the association as a party.
>
> ***
>
> (3) The purchaser of a condominium unit at a judicial foreclosure sale *** shall have the duty to pay the unit's proportionate share of the common expenses for the unit assessed from and after the first day of the month after the date of the judicial foreclosure sale ***. Such payment confirms the extinguishment of any lien created pursuant to paragraph (1) *** of this subsection (g) by virtue of the failure or refusal of a prior unit owner to make payment of common expenses, where the judicial foreclosure sale has been confirmed by order of the court ***." 765 ILCS 605/9(g)(1)(b), (g)(3) (West 2012).

According to North Shore, plaintiff's acceptance of its checks for association charges, after the trial court had confirmed the foreclosure sale, confirmed the extinguishment of any lien that plaintiff had had before April 13, 2012. North Shore also argued generally that nothing enabled plaintiff to obtain from North Shore charges that had been owing before the foreclosure was complete–and thus before North Shore had obtained either possession of or title to the property.

¶ 5 Further, North Shore contended, plaintiff's action was defeated by article 6.10 of the condominium declaration. For clarity, we quote both paragraphs 1 and 10 of article 6:

> "6.01 *** The Developer, for each Unit Ownership hereby covenants, and each Owner of a Unit Ownership by acceptance of a deed therefor *** hereby agrees to pay to the Residential Association such assessments or other charges or payments as are levied pursuant to *** this Declaration. Such assessments, *** together with interest thereon and costs of collection, if any, as herein provided, shall be a charge on the Unit Ownership and shall be a continuing lien upon the Unit Ownership against which each such assessment is made. Each such assessment, *** together with such interests and

- 3 -

costs, shall also be the personal obligation of the Owner of such Unit Ownership at the time when the assessment *** becomes due.

\* \* \*

6.10 *** The lien on each Unit Ownership *** for assessments *** shall be subordinate to the lien of any first mortgage on the Unit Ownership recorded prior to the date that any such assessments or other charges or payments become due. Except as hereinafter provided, the lien provided for in Section 6.01 shall not be affected by any transfer of title to the Unit Ownership. Where title to the Unit Ownership is transferred pursuant to a decree of foreclosure ***, such transfer of title shall to the extent permitted by law extinguish the lien for any assessments or other charges or payments under Section 6.01 which became due prior to (i) the date of the transfer of title or (ii) the date on which the transferee comes into possession of the Dwelling Unit, whichever occurs first."

North Shore asserted that section 6.10 barred the recovery from North Shore of association charges that became due before North Shore obtained possession on April 13, 2012.

¶ 6        Defendants Jeffrey and Betty Jo Powell filed an appearance.[1] Plaintiff responded to North Shore's motion as follows. Under section 9(g)(1) of the Act, and the declaration, a lien for overdue assessments accrued the instant that the assessments became due; the lien need not have been recorded separately. Under section 9(g)(1), because North Shore had not named plaintiff as a defendant in the foreclosure action, that action could not have eliminated plaintiff's lien. Further, plaintiff's acceptance of North Shore's payments of association charges from August 2012 on did not extinguish its lien, because North Shore was legally obligated to make these payments and plaintiff had the duty to collect them (see 765 ILCS 605/18.4 (West 2012)). Also, section 6.10 of the declaration did not defeat plaintiff's lien, because it stated that the lien could be extinguished only "to the extent permitted by law," and because plaintiff had not been named in North Shore's action, the law did not permit the judgment there to extinguish plaintiff's lien.

¶ 7        In reply, North Shore argued as follows. No authority enables a condominium association to enforce, *against a foreclosing lender*, a lien that arose before the completion of a foreclosure and a confirmed sheriff's sale. (North Shore's reply appears to have conceded that plaintiff was not named as a defendant in North Shore's foreclosure action.) Further, North Shore argued, it recorded its lien in 2007, before plaintiff's lien arose; plaintiff could bring a separate foreclosure action, but its lien did not have priority over North Shore's lien. Finally, North Shore reiterated that plaintiff's acceptance of North Shore's payments of association charges that had accrued after North Shore's foreclosure action was complete "confirm[ed] the extinguishment of any lien" (765 ILCS 605/9(g)(3) (West 2012)) that plaintiff had had against the property.

¶ 8        The trial court dismissed plaintiff's claims for assessments that had accrued before North Shore obtained either possession of or title to the property. The court did not dismiss the claim for "the May-July assessment amount." The court made the order immediately appealable (see

_____

[1]The record does not disclose the Powells' relationship to the property.

Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)). Plaintiff timely appealed. Plaintiff argues that the trial court erred in holding that it could not enforce its lien for assessments that had accrued before North Shore acquired either possession of or title to the property. As this appeal involves questions of law raised in a motion to dismiss under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)), our review is *de novo*. See *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003).

¶ 9        We affirm. We hold that (1) under case authority, plaintiff may not recover from North Shore any assessments that came due before April 2012; and (2) under section 9(g)(3) of the Act, North Shore's payments of association charges that came due after it obtained title to the property barred plaintiff from recovery based on the alleged lien. As we deem either of these grounds sufficient to resolve this appeal, we do not address North Shore's arguments that the condominium declaration also bars recovery and that the foreclosure judgment, by itself, extinguished plaintiff's lien.

¶ 10       We note again that the trial court denied plaintiff recovery only as to any lien that was created before North Shore obtained title to the property. Thus, this appeal concerns any lien that plaintiff had as a result of Zeit's nonpayment of charges that came due no later than April 2012.

¶ 11       We turn first to the case law that defeats plaintiff's appeal. In *Newport Condominium Ass'n v. Talman Home Federal Savings & Loan Ass'n of Chicago*, 188 Ill. App. 3d 1054 (1988), the plaintiff (association) obtained a judgment foreclosing its lien on a condominium unit and holding that the defendant mortgage lender (Talman) was liable for past-due association charges for a period that included between when Talman received a certificate of purchase at a sheriff's sale and when Talman received a deed conveying title to the unit. *Id.* at 1055-56. On appeal, Talman contended that it could not be liable for the charges that became due during this interval. The appellate court held that, although the association had had a valid lien on the unit, it could not enforce it against Talman for the period in dispute. *Id.* at 1059-60.

¶ 12       The appellate court first summarized the following pertinent facts. Talman held a first mortgage, based on its loan to the unit owner, Thompson. On March 12, 1982, Talman filed an action to foreclose the mortgage, naming the association as a party. At that time, the association also had a lien against the unit for past-due assessments. *Id.* at 1056. On November 9, 1982, the trial court in Talman's action entered a judgment of foreclosure, holding that Talman had a first lien and that the association had a subordinate lien. *Id.*[2] On January 25, 1983, at the sheriff's sale, Talman bid successfully for the property and received a certificate of purchase. However, owing to complications involving Thompson's bankruptcy and his abandonment of the unit as the property of his estate, it was not until May 29, 1985, that Talman received a sheriff's deed to the unit. *Id.* On June 25, 1985, the association filed an action to foreclose its lien, asserting that Talman was liable for assessments that had come due on or after July 25, 1983, which was the expiration of the redemption period. The trial court held that Talman was liable for these assessments, including those that had come due between

<hr/>

[2]Thus, although the opinion does not specify when the mortgage was recorded, we infer that Talman did so before Thompson missed any association charges.

when Talman received the certificate of purchase and when it received the sheriff's deed. The trial court reasoned that the certificate of purchase had given Talman "constructive title" and thus had made Talman liable for those assessments. *Id.* at 1057.

¶ 13    On appeal, Talman conceded that the association had a valid subordinate lien on the unit and that Talman was liable for all the assessments that came due after it received the sheriff's deed. However, Talman contended that it was not liable for the assessments that had come due after it received the certificate of purchase but before it obtained the sheriff's deed. The appellate court agreed. The court held that the certificate of purchase did not convey title in the unit to Talman, because, under long-standing Illinois law, title had remained with Thompson until the sheriff's deed conveyed it to Talman. *Id.* at 1059. For this reason, the association could not enforce its lien against Talman insofar as it sought to recover charges that had come due before Talman obtained title. "[B]ecause the obligation to pay condominium assessments is a covenant that runs with the land and is binding only upon title holders [citation], we conclude that Talman is not liable for the assessments which accrued during the period from July 25, 1983 (expiration of the redemption period), to May 29, 1985 (date Talman exchanged the certificate for the deed)." *Id.* at 1059-60; see also *Board of Directors of Olde Salem Homeowners' Ass'n v. Secretary of Veterans Affairs*, 226 Ill. App. 3d 281, 287 (1992) (citing *Newport*, court held that assignee of mortgage lender that had obtained foreclosure judgment was not liable to condominium association, which was not named in foreclosure judgment, for association charges that had come due before assignee obtained sheriff's deed conveying title to unit).

¶ 14    Although neither party cites *Newport*, it disposes of this appeal. Even if plaintiff's lien survived the foreclosure judgment in favor of North Shore, it could not be enforced against North Shore to the extent that it was based on association charges that came due before North Shore obtained title to the property. (Of course, the lien could not be enforced at all against the other defendants in this case, as none of them obtained title at all.) Thus, the judgment must be affirmed.

¶ 15    We next hold that the judgment must be affirmed for a second reason: as North Shore argues, under section 9(g)(3) of the Act, its payment of association charges that came due from May 2012 on defeats plaintiff's attempt to enforce its lien for the period in dispute. As noted earlier, under section 9(g)(3), the purchaser of a condominium unit at a judicial foreclosure sale must pay the charges that are "assessed from and after the first day of the month after the date of the judicial foreclosure sale," and, if the trial court has confirmed the sale, the payment "confirms the extinguishment of any lien" created under section 9(g)(1) by the failure of the previous unit owner to pay the assessments that came due earlier. 765 ILCS 605/9(g)(3) (West 2012).

¶ 16    Here, North Shore paid not only the charges that came due after July 2012 but also those that were "assessed from and after the first day of the month after the date of the judicial foreclosure sale," *i.e.*, from and after May 1, 2012. (Plaintiff refused the tender, but North Shore did all that it could to pay the charges.) The trial court had previously confirmed the judicial foreclosure sale. Plaintiff contends that section 9(g)(3) was not triggered because North Shore did not tender its payment of postforeclosure-sale association charges until June

18, 2012. Plaintiff asserts that this fact shows that North Shore did not "pay the unit's proportionate share of the common expenses for the unit assessed from and after the first day of the month after the date of the judicial foreclosure sale" (765 ILCS 605/9(g)(3) (West 2012)), *i.e.*, May 1, 2012. Plaintiff overlooks that, on June 18, 2012, North Shore tendered plaintiff a check for $589.64, the amount of the May *and* June association charges for the foreclosed-upon unit. (The check's "memo" entry so states.) Thus, although the check was tendered in June, it covered charges due on May 1, 2012.

¶ 17    We must apply the statute according to its plain meaning. See *Wells v. Board of Trustees of the Illinois Municipal Retirement Fund*, 361 Ill. App. 3d 716, 722 (2005). We agree with North Shore that its payment of the postforeclosure-sale assessments extinguished any lien that plaintiff had had based on Zeit's failure to pay the assessments that came due before the foreclosure sale. To hold that plaintiff's lien survived the payments would contradict the plain and necessary implication of section 9(g)(3). If the payments extinguished the lien that had been created under section 9(g)(1), then plaintiff cannot enforce that lien.

¶ 18    Plaintiff contends that, because it was not named as a defendant in North Shore's foreclosure action, section 9(g)(1) prevents that action from extinguishing its lien. However, as North Shore notes, plaintiff was not a necessary party to the foreclosure action, and plaintiff's lien was not of record when North Shore filed the action. Plaintiff's assertion that section 9(g)(1) prevented the foreclosure action from extinguishing its lien is beside the point: irrespective of section 9(g)(1), the payment of the association charges meant that, under section 9(g)(3), the lien was no longer in effect. For us to hold otherwise would read section 9(g)(3) out of the Act.

¶ 19    For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 20    Affirmed.