# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

*V&T Investment Corp. v. West Columbia Place Condominium Ass'n*,
2018 IL App (1st) 170436

</div>

| | |
|---|---|
| Appellate Court Caption | V&T INVESTMENT CORPORATION, Plaintiff-Appellant, v. WEST COLUMBIA PLACE CONDOMINIUM ASSOCIATION, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-17-0436 |
| Rule 23 order filed<br>Motion to publish allowed<br>Opinion filed | March 30, 2018<br><br>May 11, 2018<br>May 18, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-M1-138150; the Hon. Diana Rosario, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | John Cloutier, of Cloutier Law Group, of Chicago, for appellant.<br><br>John G. Powers and Andrew A. Girard, of Girard Law Group, P.C., of Chicago, for appellee. |

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justices Cunningham and Delort concurred in the judgment and opinion.


**OPINION**

¶ 1     Plaintiff, V&T Investment Corporation (V&T), a real estate investment company, was the foreclosure sale purchaser of the subject condominium unit located at 1637 West Columbia Avenue in Chicago. Defendant, West Columbia Condominium Association (West Columbia), is the agency in charge of maintaining and administering the common elements of the condominium building, as well as enforcing the covenants and restrictions of the association and collecting and disbursing its assessments. Several months following the foreclosure sale of the subject unit, V&T requested from West Columbia a paid assessment letter. West Columbia issued a paid assessment letter, stating that $7803.97 was due and owing on the account. V&T paid the total amount under protest. V&T then filed a complaint in *assumpsit*. Both parties filed motions for summary judgment. The trial court denied both motions, but found that section 9(g)(4) of the Condominium Property Act (Act) (765 ILCS 605/9(g)(4) (West 2012)) would apply to the matter at hand. The case then proceeded to trial, where the trial court found in favor of West Columbia. V&T now appeals. For the following reasons, we reverse and remand.

¶ 2                                    BACKGROUND
¶ 3     Both parties state in their respective appellate briefs that the facts of this case are not contested. Indicative of this is the bystander's report, which contains an agreed-upon statement of what took place at trial and the trial exhibits deemed necessary for this appeal. However, before we discuss the testimony and evidence presented at trial, a review of the facts leading up to the trial is necessary.

¶ 4     On November 12, 2009, West Columbia filed an action against Richard Dresmann, one of its unit owners, based on his failure to pay his share of the common expenses. Thereafter, the unit became subject to a foreclosure action. On October 16, 2013, V&T purchased the subject condominium unit at a judicial foreclosure sale. The sale was confirmed by court order on December 16, 2013, and the deed was issued to V&T on December 31, 2013. On February 6, 2014, V&T tendered its first assessment payments to the association for the months of January and February 2014. In June, V&T was preparing to sell the property, so it requested a paid assessment letter. On June 19, 2014, West Columbia's property manager issued a paid assessment letter to V&T, advising it that a balance of $7803.97 was due and owing. V&T paid the amount under protest so that it could sell the unit unencumbered, but subsequently filed the present action against West Columbia on July 22, 2014, seeking a judgment in the amount of $7803.97.

¶ 5     In its complaint in *assumpsit*, V&T argued that it became responsible for assessments beginning in January 2014 and that it paid all the assessments that became due thereafter. V&T further argued that it was not responsible for any assessments left unpaid by the former owner

because West Columbia obtained a judgment from the former owner in the November 2009 action.

¶ 6    West Columbia filed affirmative defenses in its answer to V&T's complaint. In its first affirmative defense, based on section 9(g) of the Act, West Columbia stated that it had filed an action on November 12, 2009, based on the failure of the former owner to pay his share of the common expenses. West Columbia stated that on November 15, 2012, the circuit court of Cook County "confirmed the existence of an arrearage regarding the unit owner's proportionate share of common expenses." West Columbia contended that, thereafter, there were no payments made to the account until February 2014. West Columbia argued that after filing an action to collect unpaid assessments, accruing assessments and reasonable attorney fees, and "being awarded judgment by the court," West Columbia was entitled to seek assessments from the first day of the month after the sale as well as six months' worth of assessments preceding the institution of an action "and attorney's fees." West Columbia also filed two counterclaims, which were later dismissed.

¶ 7    V&T filed an amended complaint on December 16, 2015, adding a count for breach of fiduciary duty. V&T argued that West Columbia breached its fiduciary duty toward plaintiff by forcing it to pay money it did not legally owe and which West Columbia knew or should have known V&T did not owe.

¶ 8    Thereafter, West Columbia filed a motion for summary judgment. West Columbia argued that V&T owed common assessments beginning on November 1, 2013, not January 1, 2014, and that by not making a payment until February 6, 2014, V&T failed and refused to comply with section 9(g)(3) of the Act. West Columbia stated that the arrearage amount left unpaid by the former owner was "never cured" and that the court had confirmed the continued existence of an arrearage amount. Citing section 9(g)(4) of the Act, West Columbia further argued that because that money was never paid, V&T had to pay the amount in assessments that would have been due during the six months preceding the institution of the prior action to collect assessments. And finally, West Columbia argued that V&T, as a foreclosure sale purchaser, had the duty to pay legal fees required by subsections (1) and (5) of section 9(g) of the Act. West Columbia claimed that V&T offered "no factual allegations, by way of affidavits, account ledgers, or proof of payments, to suggest that the amounts West Columbia had demanded were inaccurate."

¶ 9    V&T then filed a response to West Columbia's motion for summary judgment, stating that West Columbia had obtained a judgment of $3011.12 in the action West Columbia had initiated against the former unit owner, "with an *ad damnum* of $2,219.94." V&T stated that the judgment date was February 1, 2010, and that there were also costs allowed in that case. V&T stated, "See Exhibit A, 'Condominium Statement' and Exhibit B 'West Covina Condo Assoc. v. Dresmann Docket.' " Attached to the answer was Exhibit A, a statement of accounting for the subject property for the time period from January 31, 2009, to July 1, 2014. There was no indication of the amounts stated by V&T in that document. Exhibit B was a printout of an electronic docket search of the previous case, which also did not state the judgment amount or that one was obtained. It merely stated that the amount of damages sought was $2219.94. There was also an attached affidavit by John Cloutier, the attorney for V&T in the foreclosure sale, which stated: "As indicated in the court records the association only filed one action against the former owner and obtained a judgment of $3,011.82."

¶ 10    West Columbia filed a reply to V&T's response to its motion for summary judgment, stating that the only circumstance where a foreclosure purchaser "would not be required to comply with 9(g)(4) is if the 'outstanding assessments' were paid ***. That does not apply here, because in the case at hand, the outstanding balance at the time of the sale was $9,630.34." West Columbia explained the accounting of the $7803.97 that appeared in the demand letter by stating that a "significant portion" of that amount was incurred after the foreclosure sale ($2580.45), and that there was $2791 in "legal fees associated in the underlying action." West Columbia further stated that, upon review, "it does appear that [V&T] was overcharged in the amount of $849.96" because the actual amount of six months of back assessments totaled $1582.56, instead of $2357.52. West Columbia included those three amounts in an attached exhibit.

¶ 11    On February 19, 2016, V&T filed a reply, arguing that the exhibit containing the three numbers that allegedly made up the amount claimed in the demand letter should be stricken because "there is no indication as to where the numbers came from."

¶ 12    A hearing was held on the motions on April 12, 2016, where the trial court ruled that questions of fact existed and denied both motions, but found that section 9(g)(4) of the Act would apply to the matter at hand.

¶ 13    The matter proceeded to trial, which was held on July 20, 2016. The parties stipulated to a bystander's report, which contained the following information. Counsel for V&T argued in its opening statement that the deed for the subject unit was issued to V&T on December 31, 2013, and that, therefore, V&T became liable for assessments beginning in January 2014, under the rulings in *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173 (2008), and *Pembrook Condominium Ass'n-One v. North Shore Trust & Savings*, 2013 IL App (2d) 130288. Counsel argued that evidence would show that V&T paid its assessments owed each month for January 2014 through June 2014. Counsel argued that the evidence would show that West Columbia was not entitled to any assessments for the period before V&T purchased the property.

¶ 14    West Columbia's counsel argued that V&T purchased the subject unit at a judicial sale in October 2013 and did not tender any assessment payments for several months. As such, there was a lien on the property that had not been extinguished.

¶ 15    Tam Huynh, secretary of V&T, testified that V&T purchased the property at a court-ordered foreclosure sale that was confirmed by the court on December 16, 2013, with the deed issued on December 31, 2013. Huynh testified that V&T became responsible for paying assessments the following month, January 2014, and that he sent V&T's first payment in late January or early February 2014.

¶ 16    Huynh testified that he paid a $25 late fee for the January payment, and that he then paid the February, March, April, May, and June assessments on time. He testified that when V&T went to sell the property in June 2014, the association issued a paid assessment letter demanding payment of $7803.97, which V&T paid under protest because most of the charges were incurred by the prior owner. V&T then rested.

¶ 17    West Columbia's first witness was Mathieu Brown, the property manager for Westward Property Management, who testified that on October 1, 2013, there was a balance owed by the former owner of $9630.74. Brown testified that the association had rented out the unit during the time it had possession from 2009 until the judicial sale in question. Brown testified that the records showed that the association had received rent payments of $900 a month from October 2010 to July 2011, and $1000 a month from November 2011 to September 2012. Brown

- 4 -

further testified that the balance on the account in November 2012 was $904.60. He testified that the records showed no assessment payments received between November 2012 and February 2014, but that assessments had continued to accrue during that time. Brown further testified that he did not know if West Columbia had ever filed an action to collect against the former owner, but that the records showed attorney charges in 2009, so he "believed so."

¶ 18    During closing arguments, V&T argued that, according to *Pembrook*, a purchaser of a condominium unit at a foreclosure sale does not incur liability for condominium assessments due under section 9(g)(3) of the Act until the month after the court accepts the bid, confirms the sale, and the deed is issued. V&T noted that the 2006 amendments to the Act added section 9(g)(4), which allows an association to collect up to six months of unpaid assessments left by the former owner for the six months preceding the institution of an action to collect filed against the former owner. V&T argued, however, that if the assessments were paid, they were no longer collectable from the foreclosure purchaser. V&T stated that the association filed an action to collect in November 2009, and obtained a judgment of $3012.11. The association then rented out the unit for the next two years and collected $22,000 in rent. V&T argued that any money received in rent is first to be applied against the assessments sued for.

¶ 19    West Columbia's counsel stated that the Act applied, the section 9(g)(1) lien was never extinguished due to V&T's late initial payment, and the notice of sale had stated that V&T was obligated to pay the section 9(g)(1) and section 9(g)(4) liens. West Columbia's counsel argued that assessment payments under section 9(g)(3) begin the month after the sale, which occurred in October 2013.

¶ 20    The report of proceedings states that the "court ruled in favor of Defendant but would not state her reasoning or provide a written opinion." The order of judgment in the record merely states that judgment was entered in favor of West Columbia. V&T filed a motion to reconsider, which was denied. V&T now appeals.

¶ 21                                    ANALYSIS

¶ 22    The issue on appeal is whether V&T should be reimbursed for any amount it paid to West Columbia under protest. "Condominiums are creatures of statute and, thus, any action taken on behalf of the condominium must be authorized by statute." *Board of Directors of 175 East Delaware Place Homeowners Ass'n v. Hinojosa*, 287 Ill. App. 3d 886, 889 (1997). "When a controversy regarding the rights of a condominium unit owner in a condominium arises, we must examine any relevant provisions in the Act and the Declaration or bylaws and construe them as a whole." *Carney v. Donley*, 261 Ill. App. 3d 1002, 1008 (1994). Questions of statutory construction are reviewed *de novo*. *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 15. The fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature. *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 13. The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 160 (2010). A reasonable construction must be given to each word, clause, and sentence of a statute, and no term should be rendered superfluous. *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 14.

¶ 23    Section 9(g)(1) of the Act states in relevant part that:
     "(1) If any unit owner shall fail or refuse to make any payment of the common expenses or the amount of any unpaid fine when due, the amount thereof together with

- 5 -

any interest, late charges, reasonable attorney fees incurred enforcing the covenants of the condominium instruments *** shall constitute a lien on the interest of the unit owner in the property prior to all other liens and encumbrances, recorded or unrecorded ***." 765 ILCS 605/9(g)(1) (West 2014).

The plain language of section 9(g)(1) creates a lien in favor of a condominium association upon the failure or refusal of a unit owner to pay common expense assessments. *1010 Lakeshore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 23.

¶ 24        Section 9(g)(3) states:

"(3) The purchaser of a condominium unit at a judicial foreclosure sale, or a mortgagee who receives title to a unit by deed in lieu of foreclosure of judgment by common law strict foreclosure or otherwise takes possession pursuant to court order under the Illinois Mortgage Foreclosure Law [(735 ILCS 5/15-1501 *et seq.* (West 2014))], shall have the duty to pay the unit's proportionate share of the common expenses for the unit assessed from and after the first day of the month after the date of the judicial foreclosure sale, delivery of the deed in lieu of foreclosure, entry of a judgment in common law strict foreclosure, or taking possession pursuant to such court order. Such payment confirms the extinguishment of any lien created pursuant to paragraph (1) or (2) of subsection (g) by virtue of the failure or refusal of a prior unit owner to make payment of common expenses, where the judicial foreclosure sale has been confirmed by order of the court, a deed in lieu thereof has been accepted by the lender, or a consent judgment has been entered by the court." 765 ILCS 605/9(g)(3) (West 2014).

¶ 25        As our supreme court has noted, the first sentence of section 9(g)(3) "plainly requires a foreclosure sale purchaser to pay common expense assessments beginning in the month following the foreclosure sale." *1010 Lake Shore*, 2015 IL 118372, ¶ 24. The second sentence "provides an incentive for prompt payment of those postforeclosure sale assessments, stating '[s]uch payment confirms the extinguishment of any lien created' under subsection 9(g)(1) by the unit owner's failure to pay assessments." *Id.* (quoting 765 ILCS 605/9(g)(3) (West 2014)). "Accordingly, under the plain language of section 9(g)(3), the payment of [the] postforeclosure sale assessments formally approves and makes certain the cancellation of the condominium association's lien." *Id.*

¶ 26        In the case at bar, the question is whether V&T's first payment of the common expenses, on February 6, 2014, extinguished the condominium association's section 9(g)(1) lien on the property. V&T contends that the term "foreclosure sale" in the statute encompasses not just the sale, but also the confirmation by the court, which occurred on December 16, 2013, and the delivery of the deed, which occurred on December 31, 2013. Accordingly, V&T contends that assessments were not due until January 1, 2014, and thus its February 6, 2014, payment was timely. West Columbia contends that because the foreclosure sale occurred on October 13, 2013, the first payment was due on November 1, 2013, making V&T's February 6, 2014, payment late.

¶ 27        To answer the question of whether V&T's February 2014 payment extinguished the existing lien on the property, we must first decipher what "judicial foreclosure sale" means in the context of this statute. In section 9(g)(3) of the Act, the legislature stated that the payment of the unit's proportionate share of the common expenses assessed from and after the first day of the month after the date of the judicial sale, confirms the extinguishment of any lien created

pursuant to paragraph (1) or (2) of subsection (g), "where the judicial foreclosure sale has been confirmed by order of the court." 765 ILCS 605/9(g)(3) (West 2014). This last statement makes clear to us that the statute distinguishes between the judicial foreclosure sale, and the confirmation of that sale by the court. If we were to read "judicial foreclosure sale" as encompassing the confirmation of the sale, then the portion of the statute that states, "where the judicial foreclosure sale has been confirmed by order of the court" (*id.*), would be rendered superfluous. See *Slepicka*, 2014 IL 116927, ¶ 14 (a reasonable construction must be given to each word, clause, and sentence of a statute, and no term should be rendered superfluous). We therefore find that, based on the plain language of the statute, which states that the new owner shall have the duty to pay the unit's proportionate share of the common expenses for the unit assessed from and after the first day of the month after the date of the judicial foreclosure sale, which occurred on October 16, 2013, V&T had the duty to pay the unit's assessments from and after November 1, 2013.

¶ 28    V&T's reliance on *Pembrook* does not convince us otherwise. In *Pembrook*, an entity purchased the subject property at a foreclosure sale on April 13, 2012. 2013 IL App (2d) 130288, ¶ 3. The trial court confirmed the sale and granted the entity possession. *Id.* On April 17, 2012, a deed was recorded, conveying the property to the entity. *Id.* Accordingly, the sale and the exchange of the deed happened in the same the month. The entity sent payments to the association in May, June, and July 2012. *Id.* The court cited case law stating that a foreclosure purchaser is not liable for assessments that accrue before obtaining title to the property. See *Newport Condominium Ass'n v. Talman Home Federal Savings & Loan Ass'n of Chicago*, 188 Ill. App. 3d 1054 (1988). However, both *Pembrook* and *Talman* dealt with assessments that had accrued between the expiration of a mortgagor's redemption period and the date on which the mortgagor received the sheriff's deed. The case at bar does not include a mortgagor redeeming its property during a statutory time period. Accordingly, we find this discussion in *Pembrook* to be inapposite to the facts of our case.

¶ 29    Moreover, the *Pembrook* court further noted that "under section 9(g)(3), the purchaser of a condominium unit at a judicial foreclosure sale must pay the charges that are 'assessed from and after the first day of the month after the date of the judicial foreclosure sale,' and, if the trial court has confirmed the sale, the payment 'confirms the extinguishment of any lien' created under section 9(g)(1) by the failure of the previous unit owner to pay the assessments that came due earlier." *Pembrook*, 2013 IL App (2d) 130288, ¶ 15 (citing 765 ILCS 605/9(g)(3) (West 2012)). The court found that the entity's payment of postforeclosure assessments extinguished any lien that had been based on the previous owner's failure to pay assessments. *Id.* ¶ 17. This discussion of section 9(g)(3) is in line with our analysis above regarding the meaning of foreclosure sale in the Act.

¶ 30    Now that we have established that the first assessments came due the month after the foreclosure sale, which in this case occurred in October 2013, we must decide if V&T's February 6, 2014, payment extinguished the existing lien on the property. As noted above, the last part of the statute makes clear that such payment confirms the extinguishment of the condominium association's lien where the judicial foreclosure sale has been confirmed by the court. So the question then becomes, what happens when the foreclosure sale occurs two months before the confirmation of sale? We find guidance on this question from the recent case of *Country Club Estates Condominium Ass'n v. Bayview*, 2017 IL App (1st) 162459, ¶ 24, in which the argument was made that it would be unreasonable to expect foreclosure buyers to

pay condominium assessments before ownership of the property had been confirmed by the court, considering the delay in some cases between the sale and the order confirming the sale. The *Country Club Estates* court stated that courts "can and should take such circumstances into account when determining whether a buyer's payment of assessments is 'prompt.' " *Id.* The court found, "if it takes months for a judicial sale to be confirmed by the court, but the buyer pays its assessments shortly after the confirmation order (dating back to the month following the sale), the buyer's payment could be deemed prompt under the circumstances." *Id.* Because a delay in the confirmation of the sale is exactly what occurred here, we find that V&T's payment was prompt under the circumstances, as it was made shortly after the confirmation of the sale. However, while V&T's payment was prompt under this particular set of circumstances, according to *Country Club Estates*, the payment should have included the assessments that had accrued starting from November 1, 2013, the month following the sale, instead of January 1, 2014, the month following the confirmation of the sale. The assessments for November and December will be included in our calculations at the end of this order.

¶ 31　　Our finding that V&T's payment on February 6, 2014, was prompt confirms the extinguishment of the prior section 9(g)(1) lien on the subject property on February 6, 2014. We now turn to the next question, which is whether V&T was responsible for any additional payments under the Act. Section 9(g)(4) of the Act states:

> "(4) The purchaser of a condominium unit at a judicial foreclosure sale, other than a mortgagee, who takes possession of a condominium unit pursuant to a court order *** shall have the duty to pay the proportionate share, if any, of the common expenses for the unit which would have become due in the absence of any assessment acceleration during the 6 months immediately preceding institution of an action to enforce the collection of assessments, and which remain unpaid by the owner during whose possession the assessments accrued. If the outstanding assessments are paid at any time during any action to enforce the collection of assessments, the purchaser shall have no obligation to pay any assessments which accrued before he or she acquired title." 765 ILCS 605/9(g)(4) (West 2014).

¶ 32　　Based on the plain language of this section of the Act, V&T, as the foreclosure sale purchaser, was required "to pay a prior owner's unpaid assessments that accrued during the six months preceding an action to collect assessments." *1010 Lake Shore*, 2015 IL 118372, ¶ 32. In this case, the action against the prior owner was initiated in November 2009. Accordingly, V&T owed West Columbia the unpaid assessments that had accrued in the six months preceding November 2009. Based on the record on appeal, it appears that the monthly assessments were $238.76 per month during this time period, which would bring the total owed by V&T to $1432.56. However, V&T claims that West Columbia obtained a judgment of $3011.12 against the former owner in its action against him.

¶ 33　　The question of whether "the outstanding assessments [were] paid at any time during any action to enforce the collection of assessments," as required by section 9(g)(4) to erase the obligation to pay any assessments that had accrued before V&T acquired title, is a question of fact for the trial court to decide. The trial court is in the best position to resolve conflicts in the evidence and evaluate witnesses' credibility. *Nelson v. County of De Kalb*, 363 Ill. App. 3d 206, 210-11 (2005). A trial court's findings of fact will not be disturbed on review unless those findings are against the manifest weight of the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002). As mentioned previously, however, the trial court made no written findings of fact.

Based on our review of the record, we are compelled to find that the trial court's apparent finding that the outstanding assessments were not paid was against the manifest weight of the evidence.

¶ 34 During trial, the property manager for West Columbia testified that he did not know if West Columbia had ever filed an action to collect against the former owner, but that the records showed attorney charges in 2009 so he "believed so." V&T's witness, Huynh, testified that he was informed by West Columbia that it had filed an action in November 2009, but that West Columbia "had obtained possession, rented out the unit for 2 years," and that "[h]e could see from the unit's ledger that the collection of rent paid off the amount that had been sued for and therefore the assessments that it sued on had been paid and were not collectable from a foreclosure purchaser." West Columbia's counsel stipulated that West Columbia had "gained legal possession of the unit from some time in 2010 until late January 2014." West Columbia's property manager stated that West Columbia had rented out the unit during the time it had possession and admitted that the records showed rent payments of $900 per month from November 2010 to July 2011 and rent payments of $1000 being received each month from November 2011 through September 2012. West Columbia's property manager further testified that the balance on the account was $904.60 on November 12, 2012.

¶ 35 Section 9-111.1 of the Code of Civil Procedure (Code), provides in part:

"Upon the entry of a judgment in favor of a board of managers for possession of property under the [Act] *** , the board of managers shall have the right and authority, *** but not the obligation, to lease the unit to a bona fide tenant (whether the tenant is in occupancy or not) pursuant to a written lease for a term not to exceed 13 months from the date of expiration of the stay of judgment unless extended by order of court upon notice to the dispossessed unit owner. The board of managers shall first apply all rental income to assessments and other charges sued upon in the action for possession plus statutory interest on a monetary judgment, if any, attorneys' fees, and court costs incurred; and then to other expenses lawfully agreed upon (including late charges), any fines and reasonable expenses necessary to make the unit rentable, and lastly to assessments accrued thereafter until assessments are current. Any surplus shall be remitted to the unit owner." 735 ILCS 5/9-111.1 (West 2012).

¶ 36 If a condominium association elects to rent a unit to a third party after obtaining judgment of possession, section 9-111.1 requires "that such rents are applied against the defendant's delinquent assessments and the money judgment." *Board of Managers of the Inverrary Condominium Ass'n v. Karaganis*, 2017 IL App (2d) 160271, ¶ 29. Accordingly, looking at the account documents, we find that the rent paid to West Columbia while it had legal possession, totaling upwards of $20,000, far exceeded the amount claimed in damages, $2219.94, by West Columbia in its suit against the previous owner. V&T therefore did not have an obligation to pay any assessments that had accrued before it acquired title. See 765 ILCS 605/9(g)(4) (West 2014) ("If the outstanding assessments are paid at any time during any action to enforce the collection of assessments, the purchaser shall have no obligation to pay any assessments which accrued before he or she acquired title.").

¶ 37 V&T also contends that it did not owe West Columbia any attorney fees. West Columbia stated in its pleadings that a portion of the amount charged to V&T in its demand letter ($2791.00) was comprised of attorney fees accrued in the underlying action. West Columbia

argued that they had a right to recoup those fees under section 9(g)(5) of the Act. We disagree. Section 9(g)(5) states:

> "(5) The notice of sale of a condominium unit under subsection (c) of Section 15-1507 of the Code of Civil Procedure shall state that the purchaser of the unit other than a mortgagee shall pay the assessments and the legal fees required by subdivisions (g)(1) and (g)(4) of Section 9 of this Act. The statement of assessment account issued by the association to a unit owner under subsection (i) of Section 18 of this Act, and the disclosure statement issued to a prospective purchaser under Section 22.1 of this Act, shall state the amount of the assessments and the legal fees, if any, required by subdivisions (g)(1) and (g)(4) of Section 9 of this Act." *Id.* § 9(g)(5).

¶ 38 As noted above, section 9(g)(1) specifically states:

> "If any unit owner shall fail or refuse to make any payment of the common expenses *** the amount thereof together with any interest, late charges, *reasonable attorney fees incurred enforcing the covenants of the condominium instruments*, rules and regulations of the board of managers, or any applicable statute or ordinance, and *costs of collections* shall constitute a lien on the interest of the unit owner in the property ***." (Emphases added.) *Id.* § 9(g)(1).

Also noted above, the section 9(g)(1) lien in this case was extinguished when V&T made its first assessment payment on February 6, 2014. Accordingly, any attorney fees associated with the enforcement of the covenants with the previous owner should not have been included in West Columbia's demand letter. Section 9(g)(4) on the other hand, makes no mention of attorney fees. Accordingly, we find no reason as to why attorney fees were included in the demand letter to V&T and find that V&T should be reimbursed for any amount paid in attorney fees.

¶ 39 As a final matter, we address V&T's breach of fiduciary duty allegation. To state a claim for breach of fiduciary duty, a plaintiff must allege the existence of a fiduciary duty, the breach of that duty, and damages proximately caused therefrom. *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 17. Section 18.4 of the Act states: "In the performance of their duties, the officers and members of the board, whether appointed by the developer or elected by the unit owners, shall exercise the care required of a fiduciary of the unit owners." 765 ILCS 605/18.4 (West 2014). The condominium association is similarly required to exercise a fiduciary duty toward the individual unit owners. *Duffy*, 2012 IL App (1st) 113577, ¶ 18. In its amended complaint, V&T argued that West Columbia breached its fiduciary duty "when it extorted money from [V&T] that [V&T] did not owe and [West Columbia] did not have a right to collect."

¶ 40 During trial, the only argument we see in the bystander's report relating to a breach of fiduciary duty is a statement during opening arguments: "[V&T]'s counsel stated that the evidence would show that the Defendants did not have a valid reason to force V&T to pay the money it did not owe and had breached their fiduciary duty to it," and a similar statement during closing arguments. When V&T's counsel asked Huynh why West Columbia would have demanded $7803.97, Huynh apparently attempted to testify that West Columbia was in a superior position and wrongfully and powerfully made demands for money. West Columbia's counsel objected on the basis that Huynh was being asked to speculate, and the trial court sustained the objection.

¶ 41　　　In its motion to reconsider, V&T argued that West Columbia had filed an action against the former unit owner and then obtained possession, collecting $22,250 in rent. V&T argued that once the assessments for the six months preceding the institution of the action were paid, it did not have an obligation to pay any assessments that had accrued before it acquired title and, thus, West Columbia breached its fiduciary duty to V&T by charging them for those six months of assessments. However, as stated above, we find that the trial court's finding that the outstanding assessments had not been paid during the 2009 action to collect was not against the manifest weight of the evidence. Accordingly, to the extent that V&T alleged a breach of fiduciary duty based on the charge in the demand letter for the six months of assessments, we find there was no breach.

¶ 42　　　To the extent that V&T is arguing that West Columbia breached its fiduciary duty by otherwise overcharging it in the demand letter, we find that V&T did not present sufficient facts to support such a finding. As stated above, to properly prove a breach of fiduciary duty, a plaintiff is required to prove the existence of a fiduciary duty, the breach of that duty, and damages proximately caused therefrom. *Duffy*, 2012 IL App (1st) 113577, ¶ 17. Its only allegation of the existence of a duty is from section 18.4 of the Act, which states that in the exercise of their duties, the officers and members of a board shall exercise the care required of a fiduciary of the unit owners. 765 ILCS 605/18.4 (West 2014). V&T does not allege which specific duty was breached in overcharging V&T or what facts gave rise to the breach, except to say that the evidence would show that West Columbia overcharged V&T for no valid reason. *Cf. Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290, ¶ 97 (the plaintiffs properly alleged a breach when they argued that "the defendants breached their fiduciary duty by 'failing to strictly comply with the clear requirements of' the declaration and/or the [Act] by failing to itemize reserves in the budget, failing to credit unit owners with surpluses, commingling operating and reserve expenses, allowing funds in bank accounts in excess of the FDIC-insured limit, failing to provide written notices of board meeting as required by the declaration and failing to present possible conflicts of interest to the unit owners for approval"). V&T's statements are conclusory in nature and unsupported by evidence in either the bystander's report or the pleadings. Accordingly, we cannot find that West Columbia breached a fiduciary duty to V&T.

¶ 43　　　Accordingly, the total amount owed by V&T at the time of the demand letter should have been $510.94. V&T paid $7803.97 under protest. For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand for the trial court to enter judgment in favor of V&T for a portion of the payment it made under protest, in the amount of $7293.03.

¶ 44　　　Reversed and remanded.